[Crim. No. 16368. In Bank. Mar. 7, 1974.]

In re EDWARD MICHAEL YURKO on Habeas Corpus.

858

## COUNSEL

Edward Michael Yurko, in pro. per., and Richard H. Levin, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Arnold O. Overoye and Robert D. Marshall Deputy Attorneys General, for Respondent.

## OPINION

**WRIGHT, C. J.**—Petitioner was convicted in July 1969 of burglary in the first degree (Pen. Code, § 459) after trial to a jury. An amended information filed on the day of trial alleged that he had suffered three prior felony convictions. Upon advice of counsel petitioner admitted the correctness of the allegation of prior convictions and such admission formed the basis of his being adjudged an habitual criminal (Pen. Code, § 644).[1] The judgment was affirmed on appeal. (*People* v. *Yurko* (1970) 2 Crim. 17702, unpublished.)

Petitioner seeks habeas corpus relief on the grounds that he was denied a speedy trial and the effective representation of counsel at trial and on appeal, and on the further ground that he unknowingly waived constitutional protections because he was not adequately advised as to the consequences of admitting the truth of the charged prior felony convictions. (See *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].) For reasons stated later herein we find no merit in the first asserted grounds. As to the other ground we hold that henceforth an accused must be advised of (1) specific constitutional protections waived by an admission of the truth of an allegation of prior felony convictions, and (2) those penalties and other sanctions imposed as a consequence of a finding of the truth of the allegation. Because the new rule is to be applied prospectively only to admissions occurring after the filing of this opinion, petitioner is not entitled to any relief.

The record fails to disclose that petitioner was aware at the time of the admission of the truth of the charged prior convictions,[2] that if convicted of the substantive charges he might be found an habitual criminal by reason of such admission and, if so found, the consequences thereof.[3]

---

[1]Penal Code section 644, subdivision (b), reads in pertinent part: "Every person convicted . . . of . . . burglary of the first degree . . . who shall have been previously three times convicted, upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison . . ., of the crime of robbery, burglary . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life."

Unless otherwise herein provided all statutory references are to sections of the Penal Code.

[2]The priors charged were: (1) escape from lawful custody of an officer (§ 4532); (2) robbery (§ 211); and (3) burglary (§ 459). The latter two convictions are within the ambit of section 644.

[3]We cannot say from the state of the record in this case whether petitioner had the requisite knowledge of the potential applicability of section 644 to have "waived"

Petitioner's basic contention is that *Boykin* v. *Alabama, supra,* 395 U.S. 238 is applicable in proceedings wherein an accused is required to plead to a charge of having suffered a prior felony conviction, and that he was denied due process when the court failed to advise him of the consequences of his admission at the time it was made. In *Boykin* the United States Supreme Court held that it could not be presumed from a silent record that a guilty plea was voluntarily made with the necessary concomitant, knowing and intelligent waiver of constitutional rights which were forfeited by a plea of guilty. (*Id.* at pp. 242-244 [23 L.Ed.2d at pp. 279-280].) This emphasis on the necessity of an affirmative showing of waiver was grounded on the recognition that a guilty plea, ". . . is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." (*Id.* at p. 242 [23 L.Ed.2d at p. 279].)

In the case of *In re Tahl, supra,* 1 Cal.3d 122, we construed *Boykin* to require more than an inferential showing from the record that an accused waived his constitutional rights to confront accusers, to trial by jury, and against compulsory self-incrimination. We held that the court itself must "specifically and expressly" enumerate each of the rights, "employ the time necessary to explain adequately and to obtain express waiver of the rights involved" prior to acceptance of a guilty plea, and ensure that an adequate record be available for possible review. (*Id.* at p. 132; see also, *In re Sutherland* (1972) 6 Cal.3d 666 [100 Cal.Rptr. 129, 493 P.2d 857]; *People* v. *Rizer* (1971) 5 Cal.3d 35 [95 Cal.Rptr. 23, 484 P.2d 1367].)

Shortly after *Tahl* we clearly indicated, albeit in dictum, that where a submission of a case on the transcripts of the preliminary hearing was tantamount to a guilty plea for purposes of waiver of an accused's rights, the record must reflect the same affirmative showing of waiver required by *Boykin* and *Tahl.* (*In re Mosley* (1970) 1 Cal.3d 913, 926, fn. 10 [83

---

his rights when he admitted the truth of the allegation of prior felony convictions. Aside from matters of record in the criminal proceedings, conflicting affidavits have been filed by petitioner and his trial counsel. Trial counsel indicates that he advised petitioner as to the possibility and effect of an habitual criminal adjudication and that petitioner was aware of these matters. Petitioner states that he had no such awareness, that he was not so advised, and that the first time he became aware of the applicability of section 644 was at the probation and sentencing hearing. We do not attempt to resolve this conflict concerning events which occurred more than four years ago, but the record could not support a finding, if made, of a knowing and intelligent waiver. (Cf. *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357].)

Cal.Rptr. 809, 464 P.2d 473].)[4] Finally, in *People* v. *Levey* (1973) 8 Cal.3d 648 [105 Cal.Rptr. 516, 504 P.2d 452], we adopted the dictum of *Mosley* and held that where a submission is tantamount to a guilty plea for purposes of waiver of an accused's rights ". . . there must be a specific and express showing on the face of the record that the rights were known to and waived by . . . [defendant] . . . ." (*Id.* at p. 653.) ▊ Where no such showing appears on the face of the record the conviction must be set aside.

It is against this background that we turn to petitioner's contention that the same requirements of knowledge and waiver should apply to the admission of the truth of the allegation of prior felony convictions and that absent an affirmative showing of waiver on the record an adjudication, insofar as it is based on an admission, must be set aside.

The admission of the truth of the allegation of prior convictions has been differentiated from a plea of guilty through a characterization of the former as merely allowing a determination of a "status" which can subject an accused to increased punishment. (See *In re McVickers* (1946) 29 Cal.2d 264 [176 P.2d 40]; *People* v. *Franco* (1970) 4 Cal.App.3d 535 [84 Cal. Rptr. 513].) Although this may be technically correct, the distinction is meaningless if, as in the case of a plea of guilty, the accused nevertheless will be held to have waived, without proper protections, important rights by such an admission. Undoubtedly the particular rights waived by an admission of the truth of the allegation of prior convictions are important. Although there is not at stake a question of guilt of a substantive crime, the practical aspects of a finding of prior convictions may well impose upon a defendant additional penalties and sanctions which may be even more severe than those imposed upon a finding of guilt without the defendant having suffered the prior convictions. Thus a finding of prior convictions may foreclose the possibility of probation (§ 1203), may extend the term for the basic crime to life imprisonment (§ 644), and may substantially extend the time served on such a life sentence before the defendant becomes eligible for parole (§§ 3046-3048.5).

▊ The burden is on the state as in the case of the trial of other factual matters in issue to prove beyond a reasonable doubt those alleged prior convictions challenged by a defendant. (*People* v. *Womack* (1967) 252 Cal.App.2d 761 [60 Cal.Rptr. 870]; *People* v. *Niles* (1964) 227 Cal.

---

[4]Defendant in *Mosley* could not avail himself of *Boykin* as his submission had occurred prior to the effective date of the *Boykin* opinion. We held in *Tahl* that *Boykin* was to be applied only after its effective date, June 2, 1969.

App.2d 749, 757 [39 Cal.Rptr. 11].) Those procedures by which the imposition of such added penalties is to be fixed are thus protected by specific constitutional provisions and it is such protections which, it is urged, cannot be waived except with knowledge and understanding. The waiver of these constitutional protections has been fairly described as the "functional equivalent" of the waivers embodied in a plea of guilty to an independent criminal charge. (*Wright* v. *Craven* (N.D.Cal. 1971) 325 F.Supp. 1253.)

*Boykin* holds that because of the significant constitutional rights at stake in extracting from an accused a guilty plea a court must exercise the "utmost solicitude" of which it is capable in canvassing the matter with the accused to make sure he has a full understanding of what is being waived.[5] Because of the significant rights at stake in obtaining an admission of the truth of allegations of prior convictions, which rights are often of the same magnitude as in the case of a plea of guilty, courts must exercise a comparable solicitude in extracting an admission of the truth of alleged prior convictions. Although the issue was not before the Supreme Court in *Boykin* nor before us in *Tahl,* it is nevertheless manifest that an accused is entitled to be advised of those constitutional rights waived by him in making such an admission. As an accused is entitled to a trial on the factual issues raised by a denial of the allegation of prior convictions, an admission of the truth of the allegation necessitates a waiver of the same constitutional rights as in the case of a plea of guilty. The lack of advice of the waivers so to be made, insofar as the record fails to demonstrate otherwise, compels a determination that the waiver was not knowingly and intelligently made.

■ We conclude that *Boykin* and *Tahl* require, before a court accepts an accused's admission that he has suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by an admission. The accused must be told that an admission of the truth of an allegation of prior convictions waives, as to the finding that he has indeed suffered such convictions, the same constitutional rights waived as to a finding of guilt in case of a guilty plea. (See fn. 5, *supra.*)[6]

---

[5]The court held that a plea of guilty was tantamount to a waiver of three important federal rights: "First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment . . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers. . . ." (*Boykin* v. *Alabama, supra,* 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280].)

[6]We acknowledge that there may be other circumstances in particular cases which may warrant the finding of a proper waiver as we noted in *Tahl.* (See *In re Tahl, supra,* 1 Cal.3d 122, 133, fn. 6.)

A question is raised whether there is a requirement to further advise an accused with respect to the effect which a determination of habitual criminality will have on the punishment and other sanctions to be imposed upon the accused's conviction of the substantive crime charged. As stated, severe sanctions are at issue and there are numerous and complex circumstances in which those sanctions and the degrees thereof are to be made applicable. The consequences of an admission could, without imposing any undue burden on the judicial process, be explained to an accused in the interest of achieving justice both for the accused and the state. ■ We deem these to be persuasive and compelling reasons in support of the rule urged and conclude accordingly that as a judicially declared rule of criminal procedure (see *People* v. *Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513]) an accused, prior to the time the court accepts his admission of an allegation of a prior criminal conviction or convictions, is entitled to be advised: (1) that he may thereby be adjudged an habitual criminal pursuant to section 644 if that section is applicable in his case; (2) of the precise increase in the term or terms which might be imposed, if any, in the accused's case pursuant to section 644 or other applicable statutes (see, e.g., §§ 666, 667); and (3) of the effect of any increased term or terms of imprisonment on the accused's eligibility for parole.[7] The failure to so advise an accused in the enumerated instances will constitute error which, if prejudice appears, will require the setting aside of a finding of the truth of an allegation of prior convictions.[8]

---

[7]We do not reach the issue of whether there exists a constitutional compulsion that an accused be so advised, as our judicially declared rule renders such a determination unnecessary.

The practical result of this rule of criminal judicial procedure is similar to that achieved in *In re Birch* (1973) 10 Cal.3d 314 [110 Cal.Rptr. 212, 515 P.2d 12]. In that case, however, it was held that because the record failed to disclose that the accused was advised of his constitutional right to counsel he could not be deemed to have waived such right when he entered a plea of guilty without being represented. (*Id.*, at p. 321.) It is further held in the case of an accused who wishes to plead guilty without counsel that the court should first determine that the accused understands the full punishment which may be exacted including, in *Birch,* the fact that if convicted he would be required to register as a sex offender. (*Id.* at p. 321.) The compulsion to give such advice in *Birch* is there considered to be constitutionally compelled as it was deemed that the accused could not make a knowing and intelligent waiver of counsel without being fully advised of the total effect of the consequences of his waiver. In the instant case the admonition relative to the consequences of petitioner's admission does not purport to be related to a constitutional waiver and the failure to advise has not been determined to offend any constitutional prohibition or right.

[8]Although it may not be required by statute, rules of court or judicial decision, we deem it a reasonable and expedient procedure that in felony cases reporter's notes of admonitions given to an accused and his waivers, pleas and admissions be ordered transcribed and certified forthwith, and that the original of such transcript be placed in the court file.

The court is thus required to determine whether, after an accused is fully advised of both the constitutional rights subject to waiver (see fn. 5, *supra*) and the full penal effect of a finding of the truth of an allegation of prior convictions, his admission of the truth of such allegation was knowingly and voluntarily made. The record must clearly reflect both the admonitions given the accused and the fact of the accused's waivers, if any.

We held in *Tahl* that the rule there enunciated was to be given prospective application only, that is, to those cases wherein pleas were entered subsequent to the effective date of *Boykin. (In re Tahl, supra,* 1 Cal.3d 122, 135.) As noted in *Tahl,* three factors are generally considered in determining the question of the applicability of a new rule: first, the purpose of the new rule; second, the extent of reliance on the old rule; and third, the effect retroactive application would have on the administration of justice. (See *Halliday* v. *United States* (1969) 394 U.S. 831, 832 [23 L.Ed.2d 16, 19, 89 S.Ct. 1498].) The application of these criteria to the changes in procedures for accepting the admission of the truth of an allegation of prior convictions as now announced has so much in common with their application to the changed procedures of accepting a guilty plea, that we must conclude for similar reasons that the instant changes must likewise be applied prospectively only.[9] (See also *Johnson* v. *New Jersey* (1966) 384 U.S. 719, 726-733 [16 L.Ed.2d 882, 888-892, 86 S.Ct. 1772].)

Our decision to apply the newly announced rules prospectively only does not end our inquiry; we must further consider the particular event after which application is to occur. In *Tahl* the particular event was the effective date of *Boykin.* That followed, however, from the fact that *Boykin,* by virtue of the supremacy clause, mandated the rule recognized in *Tahl.* Thus courts and prosecutors in behalf of the People were fairly warned as of the effective date of *Boykin* that noncompliance therewith would thenceforth be constitutionally suspect. But *Boykin* did not purport to deal with the admission of the truth of an allegation of prior convictions and, although we now rely on *Boykin* and *Tahl* insofar as the constitutional waivers are con-

---

[9]The purpose of the rule is as much to insure an informative record as any other purpose. Retroactive application would not aid in the accomplishment of this purpose. The more significant factors in the circumstances here—reliance on the old rule and the effect on the administration of justice (see *Halliday* v. *United States, supra,* 394 U.S. 831, 833 [23 L.Ed.2d 16, 20])—clearly require a rejection of a retroactive application. Our courts have universally and justifiably relied on the old rule which permitted without an affirmative showing of waiver the acceptance of an admission of the truth of an allegation of prior convictions by an accused represented by counsel, and the adverse effect on the administration of justice if the new rule was to be applied retroactively would be overwhelming, requiring that unnumbered adjudications of habitual criminality be set aside.

cerned, it is only by a parity of reasoning that we are able to arrive at our conclusions and hold, for the first time, that heretofore established procedures for responding to charges of prior convictions are constitutionally infirm. We conclude, accordingly, that the rules requiring the admonitions herein prescribed, both as to the constitutional waivers and the nature of the penalties and other sanctions involved, shall have application in all cases wherein an accused responds, on or after the date of the filing of this opinion, to charges of prior convictions. Petitioner is thus not entitled to relief. (See *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 311 [110 Cal.Rptr. 329, 515 P.2d 273].)

■ Petitioner further contends that he was denied adequate counsel both at trial and on appeal. Such contentions are based upon the claimed failure of trial counsel to advise petitioner to deny his priors, and upon the failure of appellate counsel to urge appellate relief on the basis of decisions in other jurisdictions.

There are many tenable reasons why a trial counsel might have advised his client, in good faith, to admit charges of prior convictions. For instance, when an accused admits priors they may not be alluded to in any way during trial except for impeachment purposes if he elects to testify. (See § 1025; Evid. Code, § 788.) Further, a denial of priors would result not only in their existence being brought to the attention of the jury, but it would give undue emphasis to such priors as the People would then be required to submit proof thereof. Nor can counsel's conduct be challenged on the ground that it precluded petitioner being fully advised in connection with the admissions, as the apparently controlling cases had held, at least by dicta, that an accusatory pleading which charged priors was sufficient to place the accused on notice for due process purposes of the possibility that he might be adjudicated an habitual criminal.

We likewise conclude that there is no merit to the contention that petitioner was not well represented on appeal. ■ Counsel's representation cannot be characterized as inadequate merely because of his reliance on local as distinguished from foreign case authority. This is not a case where, because of either trial or appellate counsel's lack of diligence or skill, petitioner's trial or appeal was reduced to a farce or a sham. (See *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *In re Smith* (1970) 3 Cal.3d 192, 198-200 [90 Cal.Rptr. 1, 474 P.2d 969].)

■ Petitioner's claim of denial of a speedy trial is not cognizable on petition for the writ of habeas corpus since it must be made by pretrial motion followed by an application for writ of prohibition or by appeal,

or is waived. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452].)

The order to show cause is discharged and the petition for the writ is denied.

McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Roth, J.,* concurred.

**MOSK, J.**—I concur in the opinion but would grant relief to this petitioner for the reasons discussed in my concurring and dissenting opinion in *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 802 [87 Cal.Rptr. 839, 471 P.2d 487], vacated on other grounds (1971) 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224].

Petitions for a rehearing were denied April 17, 1974. Mosk, J., was of the opinion that the petitions should be granted. The opinion was modified on April 17 and 24, 1974, to read as printed above.

---

*Assigned by the Chairman of the Judicial Council.