Filed 3/19/13  P. v. Prasad CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| THE PEOPLE, | C070926 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F02824) |
| v. | |
| MANUEL RITESH PRASAD, | |
| Defendant and Appellant. | |

Following a jury trial, defendant Manuel Ritesh Prasad was convicted of reckless driving while fleeing from a pursuing peace officer (Veh. Code, § 2800.2, subd. (a)),[1] willfully driving a vehicle on the wrong side of the road during flight from a pursuing peace officer (§ 2800.4), misdemeanor hit and run (§ 20002, subd. (a)), and driving on a revoked license, a misdemeanor (§ 14601.1, subd. (a)).  Defendant admitted six prior

---

[1] Subsequent undesignated statutory references are to the Vehicle Code.

1

convictions for driving with a suspended license (§ 14601, subd. (a)), and the trial court sentenced him to 16 months in state prison.

On appeal, defendant contends the trial court failed to properly advise him of his rights regarding his prior convictions, it should have sentenced him to county jail pursuant to the Criminal Justice Realignment Act of 2011 (Stats. 2011, ch. 15, § 482; Stats. 2011, ch. 39, § 53; and Stats. 2011, 1st Ex. Sess., ch. 12, § 35; hereafter Realignment Act), and there is insufficient evidence to sustain the hit and run conviction. We affirm.

BACKGROUND

On April 10, 2009, at around 8:13 p.m., California Highway Patrol Investigator Cory Shell and his partner, Investigator Blake Schnabel, were on undercover assignment for the Sacramento County Auto Theft Suppression Task Force. They were in an unmarked car in Del Paso Heights when Investigator Shell noticed a Honda sedan emitting white lights from its tail lamps, a violation of section 24600, subdivision (e). Investigator Shell activated his siren and red and blue lights to initiate an enforcement stop. The Honda, driven by defendant, immediately pulled over to the right shoulder. Investigator Shell parked behind defendant's car.

As both investigators exited their car and approached the Honda, defendant drove off at a high rate of speed. The investigators returned to their car and pursued defendant. During the pursuit, defendant committed numerous traffic violations, including driving 70 miles per hour in a residential area, driving on the wrong side of the road, and running two red lights and five or six stop signs.

The pursuit ended when defendant crashed his car into a cinder block wall on the opposite side of the roadway when trying to turn left at a high rate of speed. Both the car and the wall were damaged, with pieces of the damaged wall missing.

2

Defendant fled from the Honda on foot. He ignored Investigator Schnabel's command "stop, freeze, police," and ran into a residential area. Defendant was located by a Sacramento Police Department helicopter about 25 minutes later.

Testifying on his own behalf, defendant claimed he was threatened by the members of the opposing team at a soccer game on the night of the incident. He did not hear the police siren and thought the flashing lights were high beams when he pulled over. Defendant drove off because he was scared. There were no lights other than headlights on the vehicle that followed him, and he could not hear the siren because his car's exhaust was too loud. Defendant lost control of his car because the "brake froze."

## DISCUSSION

### I

Defendant contends the trial court did not fully advise him of the rights he would waive by admitting the prior convictions. Specifically, he contends that he was not advised of his right to confrontation, his self-incrimination privilege, or the consequences of his admission.

Before a trial court accepts an admission to a prior conviction, it must advise a defendant of the same three constitutional rights waived by a guilty plea, that the defendant has the right to a jury trial, to confront witnesses, and to invoke the privilege against self-incrimination. (See *Boykin v. Alabama* (1969) 395 U.S. 238, 243 [23 L.Ed.2d 274, 279]; *In re Tahl* (1969) 1 Cal.3d 122, 132; *In re Yurko* (1974) 10 Cal.3d 857, 863 (*Yurko*).) A defendant must also be advised of the significant penal consequences of a plea or admission. (*Yurko, supra,* at p. 864.)

Whether a defendant was properly admonished of the rights he was forgoing in admitting an allegation is determined by examining the totality of the circumstances surrounding the admission. (*People v. Mosby* (2004) 33 Cal.4th 353, 361-362.)

During jury deliberation, the trial court asked defense counsel if defendant wanted a jury trial on the prior conviction allegations. After a discussion with her client, trial

3

counsel said that defendant would "just admit to the priors without a jury trial. [¶] . . . [¶] . . . Or court trial."

The trial court told defendant: "The People have alleged six prior convictions of driving while your license was suspended or revoked. If those are found to be true, those would of course affect the possible sentence that could be imposed in this case. You have a right to have a jury trial on those prior convictions. In other words, you have a right to have the jury determine beyond a reasonable doubt that you did suffer the prior convictions that the People have alleged. We separated that from the trial so that the jury will hear the evidence of the new charges without having the prior charges in front of it."

The trial court next asked defendant if he wanted to admit the priors if the jury returned a guilty verdict. After conferring with counsel, defendant said, "Yeah, I do understand." The trial court replied: "You want to do that? And you understand that you have a right to have the jury make that determination. It's a mini trial. The People would have to prove each one of those prior convictions. You have all of the rights you just went through in the [prior] jury trial: to confront the People's witnesses, present your evidence, testify yourself or not testify yourself, and bring in evidence of your own. You understand that?" Defendant responded, "Yes, sir." Asked if he had any questions for trial counsel, defendant said he did not. Counsel also told the court that she believed defendant made a knowing waiver of his right to a trial on the priors.

After the jury returned the verdict, the trial court told defendant he had previously waived his rights regarding the prior conviction allegations but never admitted them. Defendant then admitted the prior convictions alleged in the information.

There is no question that defendant was properly advised of his right to confrontation and self-incrimination privilege. The trial court's second admonition specifically informed defendant that he had the same rights in a trial on the prior convictions as he had in his trial on charged offenses, which included the right "to confront the People's witnesses," and to "testify yourself or not testify yourself." This

4

adequately informs a lay person like defendant of his right to confrontation and the self-incrimination privilege.

Whether defendant was adequately advised of the sentencing consequences of the admissions is more complex. The trial court told defendant that admitting the prior convictions would "affect the possible sentence that could be imposed in this case," but gave no specifics on how the admission would influence the sentence. Defendant was convicted of driving with a suspended license. (§ 14601.1, subd. (a).) A person convicted of violating this statute for the first time is subject to "imprisonment in the county jail for not more than six months or by a fine of not less than three hundred dollars ($300) or more than one thousand dollars ($1,000), or by both that fine and imprisonment." (§ 14601.1, subd. (b)(1).) Prior convictions for driving with a suspended license increase the possible sentence: "If the offense occurred within five years of a prior offense which resulted in a conviction of a violation of this section or Section 14601, 14601.2, or 14601.5, [the offense is punished] by imprisonment in the county jail for not less than five days or more than one year and by a fine of not less than five hundred dollars ($500) or more than two thousand dollars ($2,000)." (§ 14601.1, subd. (b)(2).)

By admitting the prior convictions, defendant possibly doubled his jail time and his fine, increased the minimum fine, guaranteed he would be sentenced to jail time and a fine, and was required to receive at least a five-day jail term. While this is a real increase in the punishment for violating section 14601.1, we examine it in the context of defendant's entire sentence -- the offense remained a misdemeanor even with the admission, and defendant was in fact sentenced to state prison on a felony charge with the section 14601.1 sentence of one year in county jail to run concurrently. While the trial court did not specifically inform defendant of these consequences, defendant conferred with his counsel twice before admitting the priors.

5

Where, as here, defendant was informed that admitting the prior convictions would influence his sentence, the priors had relatively little influence over his entire sentence, and defendant availed himself of opportunities to confer with counsel, we conclude his admission of the prior convictions was both knowing and voluntary, and he was not prejudiced by the failure to specify the exact penal consequences of the admission.

## II

Defendant contends he should have been sentenced to county confinement pursuant to the Realignment Act rather than state prison for violating section 2800.2. He is wrong.

Among the numerous changes enacted by the Realignment Act was the addition of subdivision (h) to Penal Code section 1170, which states in pertinent part: "(1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years. [¶] (2) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense." The provisions do not apply if the defendant has a current or prior serious or violent felony conviction, is required to register as a sex offender, or is subject to an enhancement under Penal Code section 186.11. (Pen. Code, § 1170, subd. (h)(3).)

Defendant asserts he was subject to sentencing under the Realignment Act because he did not come within any of the disqualifying provisions of Penal Code section 1170, subdivision (h)(3). His contention fails because it relies on a mistaken premise, that all felonies are subject to Penal Code section 1170, subdivision (h), sentencing unless the defendant is disqualified under subdivision (h)(3).

Section 2800.2, subdivision (a), states in pertinent part: "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued

6

vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year." Since section 2800.2 does not state that it is subject to sentencing under Penal Code section 1170, subdivision (h), defendants convicted of a felony violation of this statute are subject to state prison rather than the county jail provisions of the Realignment Act. The trial court did not err in sentencing defendant to state prison.

III

Defendant contends there is insufficient evidence to sustain his conviction for hit and run. (§ 20002, subd. (a).)

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)

"The essential elements of a violation of section 20002, subdivision (a) are that the defendant: (1) knew he or she was involved in an accident; (2) knew damage resulted from the accident; and (3) knowingly and willfully left the scene of the accident (4) without giving the required information to the other driver(s). [Citation.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1123, fn. 10.)

In support of his argument, defendant asserts there is insufficient evidence that he knew or reasonably should have known that he damaged the cinder block wall as a result of the crash. Defendant, fleeing from the police at a high rate of speed, lost control during a left turn and crashed into a cinder block wall, damaging it. The natural consequence of striking a wall with a speeding automobile is that the wall will sustain damage. Defendant, the driver, had a close up view of the collision he caused. A

7

reasonable finder of fact could readily infer that defendant knew he had damaged the wall as a result of the collision.

DISPOSITION

The judgment is affirmed.


                                         \_\_\_\_BLEASE_____, Acting P. J.


We concur:


   \_\_\_\_MURRAY_____, J.


   \_\_\_\_DUARTE_____, J.