Filed 10/29/13  P. v. Sumner CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TAURUS KINTE SUMNER,<br><br>    Defendant and Appellant. | D062070<br><br><br><br>(Super. Ct. No. SCD238115) |


APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed as modified with directions.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

In this case we are asked to create an exception to the current standard for the defense of entrapment by allowing the jury to consider the defendant's mental health

condition in determining whether or not the person was entrapped. The standard for the entrapment defense in California is well established in Supreme Court precedent. Even if we thought the record in this case called for an exception, which we do not, we lack the authority to modify a standard set by our Supreme Court.

A jury convicted Taurus Kinte Sumner of sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) and unlawful possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Sumner admitted he had previously been convicted of transportation of a controlled substance (Health & Saf. Code, §§ 11352 & 11370.2, subd. (c)) and that he had served a prison term (Pen. Code, § 667.5, subd. b)). Sumner was sentenced to five years in custody.[1]

Sumner appeals contending the trial court had a sua sponte duty to instruct the jury that it could consider his mental condition in determining whether he was entrapped, that he was entrapped as a matter of law, and that the trial court erred in accepting the admission of his prior convictions without obtaining a waiver of his trial rights regarding those convictions.

We find his claim of instructional error has been forfeited by failure to raise the issue in the trial court, but in any event it is not meritorious; that the record does not

---

[1]     The trial court stayed the imposition of the prison prior. The court lacks the power to stay a prison prior and must either strike it or impose it consecutively. Given the record before us it is clear the court did not intend for Sumner to serve additional custody based on the prison prior. Accordingly, we will modify the judgment to strike the prior conviction alleged under Penal Code section 667.5, subdivision (b). We will direct the court to modify the abstract of judgment accordingly.

establish entrapment as a matter of law; and that the trial court's failure to fully advise Sumner of his trial rights on the prior convictions is harmless and affirm the judgment.

STATEMENT OF FACTS

On December 7, 2011, Sumner was stopped by a San Diego police officer as Sumner came out of an apartment complex known for narcotics traffic and illegal gambling. A field interview card was prepared by the officer listing Sumner's personal information.[2]

Six days later Detective Joseph Harper, using the field identification card, placed a "cold call" to Sumner at the number listed on the card. Sumner's girlfriend, Wylnika Smith, answered the phone. After speaking to the detective, who identified himself as "Mike," she gave the phone to Sumner.

Harper told Sumner he wanted to buy some narcotics. He told Sumner he had met him at the gambling house, which apparently made Sumner more comfortable with talking to Harper. Harper asked to buy an "eight ball" of methamphetamine. Sumner said he would have to call his people. Sumner told Harper he did not sell drugs, but that he could get them.

About an hour later Sumner and Harper again talked on the phone. Sumner said he could not get the quantity Harper had asked for but could get half that amount. They agreed on a price of $60 and a meeting place for that evening.

---

2    Sumner does not contend the stop was unlawful or that the information the officer obtained was the product of any unlawful police activity.

Later that evening Sumner arrived at the designated place. Sumner called out to "Mike" and then the two engaged in the transaction. Harper gave Sumner $65 and Sumner gave him a Ziploc plastic bag containing 0.44 grams of methamphetamine. Harper gave a designated signal and Sumner was then arrested. Police found a small quantity of methamphetamine in Sumner's pants pocket. Sumner also had the $65 which Harper gave him in his pocket.

Police located Edward Woodruff parked nearby. Police recovered a bag with $3,000 in cash, Ziploc baggies, a scale, and $2,000 in Woodruff's pocket. While police were dealing with Woodruff, Sumner asked, "Why are you stopping my partner?"

During an interview Sumner told police he had sold the drugs to Harper to make a little money. Sumner did not tell police that he had been pressured or threatened by Harper in order to make the sale.

Wylnika Smith testified about receiving the phone call from "Mike." She gave the phone to Sumner but did not hear the conversation. She said that after the call from "Mike," Sumner contacted "E" (Woodruff) and said he was going to make a run with him. After several calls from "Mike," Sumner left the house. Smith said Sumner seemed skeptical, but not fearful when he left.

The defense called Dr. Raymond Murphy, a forensic psychologist, to testify. Dr. Murphy had conducted a mental status evaluation of Sumner and reviewed a number of other materials. Murphy testified that Sumner was diagnosed in his early 20's with paranoid schizophrenia. Murphy further described Sumner's history of drug use and the effects his mental condition might have on his behavior.

4

Sumner testified in his own behalf.  He recalled being stopped by an officer near the gambling house and that he gave the officer his personal identification information.  He testified he received the phone calls from "Mike" and that he arranged for the drugs and set the meeting place.  He said he only expected to make $5 from the deal and that he went through with it in order to get "Mike" off his back.

Sumner acknowledged he had previously pleaded guilty to selling drugs.

DISCUSSION

I

*ALLEGED INSTRUCTIONAL ERROR*

The trial court gave the jury the standard entrapment instruction contained in CALCRIM No. 3408.[3]  Defense counsel offered some minor modifications, unrelated to

---

3    CALCRIM No. 3408 provides:  "Entrapment is a defense.  The defendant has the burden of proving this defense by a preponderance of the evidence.  This is a different standard from proof beyond a reasonable doubt.  To meet this burden, the defendant must prove that it is more likely than not that he was entrapped.  [¶] A person is entrapped if a law enforcement officer engaged in conduct that would cause a normally law-abiding person to commit the crime.  [¶] Some examples of entrapment might include conduct like badgering, persuasion by flattery or coaxing, repeated and insistent requests, or an appeal to friendship or sympathy.  [¶] Another example of entrapment would be conduct that would make commission of the crime unusually attractive to a normally law-abiding person.  Such conduct might include a guarantee that the act is not illegal or that the offense would go undetected, an offer of extraordinary benefit, or other similar conduct.  [¶] If an officer simply gave the defendant an opportunity to commit the crime or merely tried to gain the defendant's confidence through reasonable and restrained steps, that conduct is not entrapment.  [¶] In evaluating this defense, you should focus primarily on the conduct of the officer.  However, in deciding whether the officer's conduct was likely to cause a normally law-abiding person to commit this crime, also consider other relevant circumstances, including events that happened before the crime, the defendant's responses to the officer's urging, the seriousness of the crime, and how difficult it would have been for law enforcement officers to discover that the crime had been committed.

5

the issues on appeal, but the trial court rejected them and gave the instruction in its unmodified form. Sumner now contends, for the first time on appeal, that the court should have modified the instruction to permit the jurors to consider his mental disorder in determining whether he had been entrapped by police. The People contend Sumner has forfeited the issue by failing to raise it in the trial court, but in any event the trial court had no duty to give such instruction. We agree with the People on both points and reject Sumner's contention.

## A. Background

Prior to trial the court held a hearing under Evidence Code section 402 to determine the admissibility of Dr. Murphy's testimony regarding Sumner's mental state at the time of the events in this case. The evidence was offered by the defense for the purpose of supporting his defense of entrapment. Counsel said the evidence was not offered to disprove Sumner's mental state, rather it was alleged to be relevant as it would show how he was affected by the officer's conduct. The prosecution objected to the evidence as irrelevant to the entrapment defense in California. At the end of the hearing the trial court ruled the evidence admissible for the limited purposes as offered.

During the jury instruction conference defense counsel offered a few minor modifications to the standard entrapment instruction, none of which related to a potential change in the objective standard of the impact on the "normal law-abiding person."

---

[¶] When deciding whether the defendant was entrapped, consider what a normally law-abiding person would have done in this situation. Do not consider the defendant's particular intentions or character, or whether the defendant had a predisposition to commit the crime. [¶] If the defendant has proved that it is more likely than not that he sold drugs because he was entrapped, you must find him not guilty."

6

During closing argument the prosecutor repeatedly stressed that evidence of Sumner's mental disorder was not relevant to the defense of entrapment.

## B.  Forfeiture

The People argue that Sumner has forfeited the claim of instructional error by failing to request a relevant modification of the standard instruction.  They argue that the instruction, CALCRIM No. 3408, is a correct statement of law and that if Sumner believed the standard for assessing the impact of police conduct should be subjective as to him, he had a duty to make such request.  We agree with the People's position.

Where an instruction is a generally correct statement of the law, a defendant wishing a modification to tailor the instruction to a modification of established law must make a specific request.  Such modified instruction is referred to as a pinpoint instruction, which must be first presented to the trial court before the issue may be raised on appeal. (*People v. Jennings* (2010) 50 Cal.4th 616, 674-675; *People v. Daniels* (1998) 17 Cal.4th 468, 514; *People v. Tuggles* (2009) 179 Cal.App.4th 339, 364-365.)

In this case the trial court was never asked to address the question of whether the objective standard used to evaluate police conduct in the defense of entrapment should be modified to some extent.  As we will discuss below, the instruction given is an accurate statement of California Supreme Court precedent, thus requiring a request for a pinpoint instruction to preserve the issue for review.

## C.  The Defense of Entrapment

It is generally accepted that there are two basic standards used in the United States to assist juries in deciding whether police conduct has, as a policy matter, resulted in

7

causing a person to commit a crime, which he or she would not have done without improper police behavior. The standard used in the federal courts is the so-called subjective standard under which the courts examine the impact of police behavior on the individual defendant. (*Sorrells v. United States* (1932) 287 U.S. 435.) The other standard, the so-called objective standard, which is used in California, looks at the effect of police behavior on the "normally law-abiding person." (*People v. Barraza* (1979) 23 Cal.3d 675, 690 (*Barraza*).)

In *Barraza, supra,* 23 Cal.3d 675, the court examined the value of both standards for the entrapment defense and determined that California would follow the objective standard. Since then the court has revisited the issue and continues to adhere to the standard set in *Barraza.* (*People v. Watson* (2000) 22 Cal.4th 220, 223; *People v. Smith* (2003) 31 Cal.4th 1207, 1216 (*Smith*); see also *People v. Phillips* (2000) 83 Cal.App.4th 170, 172-173 (*Phillips*).)

Sumner has not cited this court to any California authority that hints, let alone establishes, that there is an exception to the standard set by our Supreme Court. Rather, it appears Sumner asks us to create an exception to the established rule.

### D. Analysis

Given the standard for determining entrapment set by the court in *Barraza, supra,* 23 Cal.3d 675, the testimony offered by Dr. Murphy was legally irrelevant to the issues in this case. Although the court, perhaps erring on the side of caution, allowed some evidence of Sumner's mental disorder for purposes of the entrapment defense, the law and the instruction plainly requires the jury to evaluate the defense by determining the

8

impact of law enforcement conduct on the normal law-abiding person. As the court held in *Phillips, supra*, 83 Cal.App.4th at pages 172 through 173, we presume persons who have mental disorders, but who are not insane are capable of resisting the temptation to commit a crime when presented simply with the opportunity to do so. (See also Penal Code sections 25, subdivision (b) and 26.)

Applied to the present case there is nothing in this record that requires a finding the action of the police officer overwhelmed Sumner's ability to resist temptation or that he was harassed or intimidated into committing this crime. Indeed, in his argument for admissibility of Dr. Murphy's testimony counsel assured the court there would be no claim of lack of impulse control or that he could not form the intent to sell drugs.

Thus, even if Sumner's claim of instructional error was not forfeited, we find there was no error on the part of the trial court in instructing the jury as it did.[4]

II

*ENTRAPMENT AS A MATTER OF LAW*

Relying exclusively on out-of-state authorities, Sumner claims he was entrapped as a matter of law. He posits that entrapment was established because police did not know he was a drug dealer, the amount of money and drugs were extremely small and police had no information about Sumner as a drug dealer before the cold call. Respectfully, these "undisputed facts" do not establish entrapment as a matter of law.

---

[4]    Sumner also argues the alleged instructional error denied him federal due process. In light of our conclusion there was no error and that the issue is nonetheless forfeited, we decline to discuss his due process claim.

## A. Legal Principles

It is arguable that California does not recognize a defense of entrapment as a matter of law. In any event, case law fairly establishes that the applicability of the defense is a factual matter. (*Barraza, supra*, 23 Cal.3d at p. 691, fn. 6; *People v. Lee* (1990) 219 Cal.App.3d 829, 836.)

As we have previously noted, the properly instructed jury reached the conclusion the police conduct in this case did not constitute entrapment. However, considering Sumner's claim the undisputed evidence establishes entrapment, we reject the contention based upon our review of the record and controlling authority.

In *Smith*, *supra*, 31 Cal.4th at pages 1225 through 1226 the court discussed the standards for determining whether police conduct was outrageous and thus entrapment as a matter of law. The standards include (1) whether police manufactured a crime which otherwise would not have been committed, or involved themselves in criminal activity; (2) police engaged in conduct which was criminal or repugnant to any sense of justice; (3) the defendant's reluctance to commit the crime was overcome by appeals to friendship, humanitarian instincts, sympathy, promises of exorbitant gain or persistent solicitation despite the defendant's unwillingness; and (4) a record demonstrating police simply wanted a conviction for no legitimate law enforcement purpose.

*Smith, supra,* 31 Cal.4th 1207, involved a sting operation in which the police provided the defendant with the information and the opportunity to steal a van loaded with property from the police property room. The court found nothing exceptional about the police behavior and declined to find entrapment as a matter of law.

## B. Analysis

The facts of the present case likewise present no exceptional conduct by police. Sumner could have declined to talk with "Mike" or to sell drugs. The officer did not threaten Sumner, harass him or appeal to any "humanitarian instincts." This was a very straightforward drug deal in which the undercover officer asked to buy drugs and the defendant agreed to the quantity, price and location. The defendant arrived with his "partner," an apparent drug dealer, and willingly engaged in a sale, albeit of a small quantity of drugs.

At base, Sumner asks this court to set policy for police agencies as to who they should investigate, and upon what basis they should do so. That is not our role and there has been no direction from our Supreme Court to do so. Applying the well-established objective standard for entrapment we are satisfied there is nothing in this record that requires a finding that Sumner was entrapped.

## III

### *THE PRIOR CONVICTIONS*

At the conclusion of the trial the court asked if Sumner was going to admit the alleged prior convictions. Defense counsel said Sumner was going to do so. Accordingly, the trial court dismissed the jury and obtained Sumner's admission of the alleged prior convictions. The court did not discuss Sumner's trial rights with him at that time. Thus, Sumner contends the admissions of the prior convictions are invalid and that the case must be remanded for further proceedings.

11

Once again we find ourselves in the position of sorting through the record to see if there is evidence that the defendant had been sufficiently aware of his or her trial rights regarding the prior convictions that the admissions should be affirmed, notwithstanding the failure of the trial court to comply with the long standing, well-established rule regarding the admission of alleged prior convictions. We are compelled to ask, at least rhetorically, how long would it have taken the trial judge to properly advise the defendant of the appropriate trial rights, five minutes or less? Having asked the question, one is inclined to simply send the case back and tell the trial court to follow the rules. However, in light of the directions from our Supreme Court, the answer is not that simple.

Viewing the record as a whole, in light of controlling authority, we are satisfied that Sumner's admission of the truth of the alleged prior convictions was knowing and voluntary. Thus, although the trial judge did not take the time to properly advise the defendant of his trial rights and obtain a knowing waiver of those rights, it appears the defendant was well aware of those rights, and with the assistance of counsel made a voluntary decision to waive trial and admit the priors.

A.  Legal Principles

Almost 40 years ago, the court in *In re Yurko* (1974) 10 Cal.3d 857, 863 (*Yurko*), determined that in order to obtain a valid waiver of a defendant's trial rights in admitting the truth of an alleged prior conviction, the trial court was required to inform the defendant of the right to a jury trial, the right to confront and cross-examine witnesses and to invoke the right against self-incrimination and remain silent during the trial. The

12

*Yurko* court held that failure to make the proper advisements on the record was per se reversible error. (*Ibid.*)

Since that time the Supreme Court has reconsidered *Yurko, supra,* 10 Cal.3d 857, to the extent that the proper advisement of rights is required, but reviewing courts are not automatically required to set aside admissions where the proper procedure has not been followed. The question remains, however, whether the record shows the defendant was aware of his rights and that the admissions were voluntary. (*People v. Howard* (1992) 1 Cal.4th 1132, 1175; *People v. Mosby* (2004) 33 Cal.4th 353, 360-363 (*Mosby*).)

Under the standards set forth in *Mosby, supra,* 33 Cal.4th 353, a reviewing court can examine the record to see what, if any admonitions were given by the court. We can also look to the defendant's experience in just completing a jury trial prior to the admissions. We can also consider the defendant's criminal history as revealed by the record to determine if it permits an inference the defendant was sufficiently familiar with trial rights to support the conclusion that he or she voluntarily decided to give up the right to trial on the prior convictions and admit them.

### B. Analysis

Applying the *Mosby* standards, we note first that at the beginning of the trial process the court dealt with the right to trial on the prior convictions. The court said: "Obviously, we'll bifurcate the priors. Your attorney will talk this over with you. If you are found guilty, you have a right to have the jury decide your prior conviction or waive that right to a jury, let them go home, and the judge, myself, can decide the issue of prior convictions. That's assuming you're found guilty. You can talk that over with your

13

attorney. We don't have to decide that today, probably on Monday." Sumner responded: "Okay."

After the jury verdict, the trial court was apparently informed that Sumner would admit the prior convictions. The court said: "For the record, on the issue of the prior convictions, the jury will be discharged. The defendant has waived that issue to have a jury trial on that matter and proceed with a bench trial. Is that correct counsel?" [¶] [Defense Counsel]: Yes, your honor."

Obviously the trial court failed to comply with *Yurko, supra,* 10 Cal.3d 857, at the time of admission of the priors. However, Sumner had just completed a jury trial, confronted witnesses and presented a defense. He was certainly aware of the opportunity for a jury trial and his rights in such trial. In addition, during his testimony at trial he admitted he had suffered a prior conviction. The record shows he pleaded guilty to that prior offense. Thus, we have no serious doubt that Sumner knew he could have a full trial on the prior convictions. He had already testified to such conviction and was represented by counsel through the process. Thus we are satisfied the record supports the finding that Sumner made a knowing and voluntary decision to give up the right to any form of trial of the alleged priors and to simply admit them. On this record the trial court's failure to comply with *Yurko* is harmless.

DISPOSITION

The judgment is modified with directions to the superior court to strike the alleged prison prior (Pen. Code, § 667.5, subd. (b)), and to amend the court records accordingly. In all other respects the judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


IRION, J.