Filed 9/16/20  P. v. Navarro CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN MARTINEZ NAVARRO,<br><br>    Defendant and Appellant. | 2d Crim. No. B296117<br>(Super. Ct. No. 2015024566)<br>(Ventura County) |

Juan Martinez Navarro was convicted by a jury of making a criminal threat (Pen. Code,[1] § 422, count 1); carrying a concealed dirk or dagger (§ 21310, count 2); battery (§ 242, count 3); exhibiting a deadly weapon (§ 417, subd. (a)(1), count 4); and a civil rights violation (§ 422.6, subd. (a), count 5).  The jury also found as to count 1 that Navarro personally used a deadly weapon (§ 12022, subd. (b)(1)), and he committed a hate crime

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

(§ 422.75, subd. (a)).  As to counts 3 and 4, the jury found that he committed the crimes in violation of the victim's civil rights (§ 422.7, subd. (a)).  Navarro admitted that he had suffered a prior serious felony conviction.

The trial court sentenced Navarro on count 1 to the low term of 16 months, doubled to 32 months for the prior strike, a consecutive one year for the hate crime allegation, and a consecutive five years for the prior serious felony conviction, for a total of eight years eight months.  The court struck the weapon enhancement in the interest of justice.  The court stayed the 32-month concurrent sentences on counts 2 and 4 pursuant to section 654.  The court imposed a concurrent 32-month sentence on count 3 and 180 days on count 5.

We reverse the prior serious felony conviction enhancements for a lack of proper advisements.  In all other respects, we affirm.

FACTS

J.Z. is a biological male who has identified as a woman since age 13.  She was 30 years old in 2015.

In the early morning on August 2, 2015, J.Z. left Ruby's Cafe in Oxnard and began walking to a nightclub.  She was wearing a blond wig, a gold-colored silk dress, and shoes with stiletto heels.  Before she got to the nightclub, she saw Navarro across the street.  She had never seen him before, and he did not indicate that he knew her.  Navarro ran across the street, approached J.Z. from behind, and placed his hands on her waist. He said, "[W]hat's up girl?  Do you want to drink?"  He was carrying a bag with two cans of beer.  J.Z. was frightened.  She did not want to explain to him that she was a biological male.

J.Z. told Navarro that she was not a woman, declined his offer of a drink, and began walking away.  Navarro followed her, and said, "I know you're a faggot.  And I'm going to fuck you really hard like faggots like getting fucked."  J.Z. was very scared and kept walking.

Navarro followed J.Z.  Although she was frightened, she could not call for help.  She did not have a cell phone and no one else was in the vicinity.  Navarro again asked J.Z. if she wanted to drink.  When she refused, he gulped down one of his beers and continued following her.  He then yanked up her dress and pulled down her underwear.  She felt frightened and violated.  She asked him to leave her alone as she kept walking away.

Suddenly, Navarro grabbed J.Z. by the waist and dragged her to the back of a market.  She managed to fend him off and ran across the street.  When he caught up with her, he dragged her to the back of a gas station.

Navarro cornered J.Z.  He told her he would stab her if she did not lift up her skirt.  Then he took a knife from his waistband and threatened to kill her if she did not take off her clothes.  When she did not take off her clothes, he struck her with his right hand and tried three times to stab her with a knife in his left hand.  As she tried to escape, he hit her in the face.  When she fell down, he kicked her several times.  During the incident, he kept calling her "fucking bitch" and "fucking faggot."  He threatened to kill her while brandishing the knife.

J.Z. escaped to her car where she left her cell phone.  She called the police.  Navarro was still in the area, and he was arrested.

*Motion for a New Trial*

At Navarro's motion for a new trial, Navarro called Jorge Garrido as a witness. Garrido testified that on the night of August 2, 2015, he was standing near Oxnard Boulevard when he observed a group of men, including J.Z., dressed as women. Garrido had never met J.Z., but he recognized her from local clubs. Garrido saw J.Z. leave the group and walk across the street. He heard J.Z. say that she was going to seduce Navarro. J.Z. approached Navarro and it appeared she wanted to touch him. When Navarro tried to protect himself, J.Z. became angry and started cursing.

Garrido said J.Z. was never in an alleyway, but remained on the street. Navarro did not strike J.Z. He only used his hands to distance himself from her. Navarro did not pull a knife and J.Z. did not fall to the ground.

J.Z. returned to the group. She took out a cell phone. She told her friends she was calling the police so that they can "remove that unhappy person . . . for not having accompanied [her]." When the police arrived, Garrido left. He was on probation and was not sure if he had warrants. He was unaware that the incident resulted in a trial.

*Ruling on Motion*

After hearing Garrido's testimony, the trial court denied the motion for a new trial, stating: "First of all, as I indicated when I came out, this is—today is a long time coming. It's been 13 months. Mr. Navarro has been extremely patient with the process, waiving time each and every time for his attorney. And understandably so. We were setting off sentencing because of a very important motion and issue that Mr. Zaehringer is raising in his behalf. [¶] And I'm also well aware that Mr. Navarro has

4

had numerous family members and other support people that have been here each and every time, sometimes when those hearings took less than five minutes. They've been here supporting him, and that says a lot for Mr. Navarro and his family support he's got. [¶] As Mr. LeCedre said, I think the motion is well-taken which is why we took the time that we did in order to flesh out the issue, make sure that we had Mr. Garrido present, that took several months in and of itself, to ensure he was going to be here to testify. [¶] As I indicated, I listened to the testimony of Mr. Garrido and then got the transcript and then had the transcript of the victim here, [J.Z.] to compare that with. [¶] I agree with both sides to some extent, that there were discrepancies in what Mr. Garrido brought forward, but I look at those discrepancies kind of as book-ending. And by that I mean, Mr. Garrido's testimony as to his observations before the attack took place were different than [J.Z.'s] testimony to the jury. Mr. Garrido's observations after the attack took place were different than [J.Z.'s] recollection was. [¶] But the meat here is in the middle. The charges resulted from what came after the initial contact and before defendant was arrested. That's where the crimes occurred, in that gap of time. [¶] And as has been said here this morning, there really were only two witnesses that were able to describe exactly what happened. And the jury listened to that evidence, and the jury made a decision based on the meat of the case, the specific crimes that were alleged. [¶] There was, as Mr. LeCedre indicated, at least corroboration from a physical evidence standpoint about the knife that was described by [J.Z.] and was found to be on the defendant. [¶] So while I think the motion is well made, I think it was something that needed to be heard, but I do not think that the testimony from Mr. Garrido

5

creates or rises to the level where the Court can set aside a unanimous verdict by a jury of 12 people on every single count or, for that matter, on any of those five counts. [¶] . . . [F]or those reasons, the [d]efense motion is respectfully denied."

## DISCUSSION

### I.

### *Motion for a New Trial*

Navarro contends the trial court abused its discretion in denying his motion for a new trial.

Section 1181, subdivision 8 gives the trial court the discretion to grant a new trial when new evidence is discovered material to the defendant that he could not have with reasonable diligence discovered and produced at trial. The grant or denial of a new trial motion is a matter within the sound discretion of the trial court. (*People v. Randle* (1982) 130 Cal.App.3d 286, 292.) Each case must be judged on its own factual background. (*Ibid*.)

Navarro argues that the trial court apparently found Garrido's testimony credible. But it is not apparent. The court made no such finding.

The trial court stated that it agreed with the prosecutor that the motion was "well-taken." But that does not mean the court believed Garrido. It simply means the motion was not frivolous. The court also stated that Garrido's testimony brought forward discrepancies. That is a statement of the obvious. There were clearly discrepancies between Garrido's and J.Z.'s testimonies. That does not mean the court believed Garrido. The discrepancies to which the court referred involved only the beginning and the end of the incident. The court was not required to believe Garrido's testimony that he saw the entire encounter. Garrido testified that Navarro did not pull a knife on

6

J.Z.  The court pointed out that J.Z. was able to identify the knife found on Navarro.  The ultimate finding the court made about Garrido's testimony is that it is not sufficient to set aside the verdict.  The trial court did not abuse its discretion.

## II.

### *Prior Conviction*

Navarro contends he did not enter a valid admission of his prior serious felony conviction.

In *In re Yurko* (1974) 10 Cal.3d 857, our Supreme Court held that before a court accepts the accused's admission that he suffered a prior felony conviction, the accused must be advised that by the admission, he is waiving his rights to confront witnesses, to trial by jury, and against compulsory self-incrimination.  (*Id*. at pp. 861-863.)  In addition, the accused must be advised that he may be adjudged to be a habitual criminal, of the precise increase in the term or terms that might be imposed, and the effect of any increased term or terms on the accused's eligibility for parole.  (*Id*. at p. 864.)

Here Navarro was not advised of any of those rights.  The trial court simply asked if he admitted a prior conviction for violating section 211.  Navarro did not make an admission.  His counsel answered, "Yes."

The People argue the error is harmless.  They cite *People v. Mosby* (2004) 33 Cal.4th 353, 361 (*Mosby*) for the proposition that we must examine the entire record of the proceeding to determine whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of the circumstances.  In *Mosby*, the defendant was convicted by a jury for selling cocaine.  In addition, it was alleged that he had a prior felony conviction for drug possession, making him ineligible for

7

probation.  Prior to the defendant's admission of the prior conviction, the trial court advised him only of his right to a jury trial on the prior conviction.  Our Supreme Court noted that the defendant had just had a trial at which he did not testify and at which he had, through counsel, confronted witnesses.  Thus, he would have been aware of the right to remain silent and confront witnesses.  (*Id*. at p. 364.)  The court also noted that the defendant had previous experience with the criminal justice system.  His prior conviction was based on a plea of guilty at which time he would have received a full advisement of his rights.  (*Id*. at p. 365.)  The court concluded the defendant's admission was knowing and intelligent.

But *Mosby* did not involve the "Three Strikes" law.  Even assuming Navarro was aware of his right to a jury trial, to confront witnesses, and against compulsory self-incrimination, it is not all that is required.  Navarro was not advised of the precise increase in the term, the effect on his eligibility for parole, or his future status as a "three striker."  (See *In re Yurko, supra*, 10 Cal.3d at p. 864.)  If the People deem it important that Navarro's sentence be enhanced for his prior serious felony conviction, they must try again.

DISPOSITION

The sentence enhancements arising from Navarro's prior serious felony conviction are reversed and the matter is remanded for resentencing. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


PERREN, J.


TANGEMAN, J.

9

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.