Filed 1/19/21  P. v. Davison CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F078761 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. BF172845A) |
| LAWRENCE WILFORD DAVISON, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Smith, Acting P.J., Meehan, J. and Snauffer, J.

Defendant Lawrence Wilford Davison was convicted by jury trial of inflicting corporal injury on a cohabitant and assault with a deadly weapon. The jury also found true the allegations that defendant used a deadly or dangerous weapon and inflicted great bodily injury. In a bifurcated proceeding, the trial court found true the allegation that defendant had suffered a prior domestic violence conviction within the previous seven years. On appeal, defendant contends the trial court erred in (1) relying on the same facts to both aggravate and enhance his sentence and (2) failing to advise him of his *Boykin-Tahl*[1] rights before accepting his stipulation that he had a prior domestic violence conviction. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Defendant and his fiancée Debra had been in a romantic relationship since 2012. They lived together in an apartment in Bakersfield. On July 1, 2018, Bakersfield Police Officer John Dunn responded to Kern Medical Center to assist another officer in a suspected domestic violence investigation involving defendant and Debra. Debra told Dunn she was walking home from a coffee shop with defendant when she was attacked by strangers and defendant attempted to fight them off. Dunn believed that Debra's assault occurred at her apartment based on his investigation. Debra denied that defendant assaulted her, but defendant was ultimately arrested in connection with her attack.

On September 12, 2018, the Kern County District Attorney filed an information charging defendant with inflicting corporal injury upon a cohabitant (Pen. Code, § 273.5, subd. (a)[2] (§ 273(a)); count 1) and assault with a deadly weapon, to wit: a bamboo stick and/or wooden dowel (§ 245, subd. (a)(1); count 2). As to count 1, the information alleged that defendant used a deadly or dangerous weapon (§ 12022, subd. (b)(1)) and

---

[1]     *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*).

[2]     All statutory references are to the Penal Code unless otherwise noted.

2

inflicted great bodily injury on Debra (§ 12022.7, subd. (e)) in the commission of the offense. Also as to count 1, the information alleged defendant had suffered a prior section 273.5(a) conviction within the previous seven years (§ 273.5, subd. (f)(1) (§ 273.5(f)(1)).[3] As to count 2, the information alleged defendant inflicted great bodily injury on Debra (§ 12022.7, subd. (e)).

On September 17, 2018, defendant pled not guilty and denied the special allegations.

On November 14, 2018, during motions in limine, defendant moved to exclude evidence of his prior acts of domestic violence on the grounds that they were not corroborated and were remote in time. The prosecutor sought to admit the same evidence pursuant to Evidence Code section 1109, to show defendant's propensity to commit acts of domestic violence.[4] The trial court granted the prosecutor's request.

On November 29, 2018, the jury found defendant guilty on both counts and found the weapon use and great bodily injury allegations true. In a bifurcated proceeding, the trial court found the prior domestic violence conviction allegation true.

On January 24, 2019, the trial court sentenced defendant to a total of 11 years in state prison as follows: on count 1 (§ 273.5(a)), the upper term of five years, plus a one-year weapon use enhancement (§ 12022, subd. (b)) and a five-year great bodily injury

---

[3]    Section 273.5(f)(1) provides: "Any person convicted of violating this section for acts occurring within seven years of a previous conviction under subdivision (a), or subdivision (d) of Section 243, or Section 243.4, 244, 244.5, or 245, shall be punished by imprisonment in a county jail for not more than one year, or by imprisonment in the state prison for *two*, *four*, *or five years*, or by both imprisonment and a fine of up to ten thousand dollars ($10,000)." (Italics added.)

[4]    Evidence Code section 1109, subdivision (a)(1) provides: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

enhancement (§ 12022.7, subd. (e)); on count 2, the upper term of four years, plus a five-year great bodily injury enhancement (§ 12022.7, subd. (e)), both stayed pursuant to section 654.

Defendant filed a notice of appeal the following day.

## DISCUSSION

### I.      Forfeiture and Ineffective Assistance of Counsel

"In order to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims, reviewing courts have *required* parties to raise certain issues at the time of sentencing. In such cases, lack of a timely and meaningful objection forfeits … the claim." (*People v. Scott* (1994) 9 Cal.4th 331, 351.) "These principles are invoked as a matter of policy to ensure the fair and orderly administration of justice." (*Ibid.*) Recognizing that we may conclude he forfeited both issues by failing to raise them below, defendant argues defense counsel was ineffective for failing to object.

To establish ineffective assistance of counsel, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217 (*Ledesma*).)

First, as for the adequacy of counsel's representation, " '[u]nless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' [Citations.] When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674–675.)

4

Second, to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, 466 U.S. at p. 694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217–218.)

The reviewing court can adjudicate an ineffective assistance claim solely on the issue of prejudice without determining the reasonableness of counsel's performance. (*Strickland*, *supra*, 466 U.S. at p. 697; *Ledesma*, *supra*, at pp. 216–217; *People v. Hester* (2000) 22 Cal.4th 290, 296–297.)  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." (*Strickland*, at p. 697.)  We follow that course here.

## II.    Dual Use of Facts

Defendant contends the trial court erred in imposing the upper term on count 1 without striking the weapon use and great bodily injury enhancements because it impermissibly relied on the same facts underlying the enhancements to impose the upper term.  We conclude any error was harmless.

### A.    Background

Prior to sentencing, the probation officer recommended a total sentence of 11 years.  The probation report identified one mitigating circumstance relating to defendant's satisfactory performance on felony probation in two previous cases and the following three aggravating circumstances:

> "(1).   The defendant has engaged in violent conduct which indicates a serious danger to society which is evidenced by two previous convictions of domestic violence in the state of Utah and two previous convictions of

5

domestic violence involving the same victim. Further, he was on felony probation for a [section] 245(a)(1) [violation].[5]

"(2). The defendant's prior convictions as an adult are numerous.

"(3). The defendant's prior performance on probation was unsatisfactory in that he failed to comply with terms and re-offended."

The probation report noted that the seriousness of the case circumstances and defendant's ongoing criminality far outweighed the single mitigating factor.

In making its sentencing determination, the trial court stated it had considered the probation report, defendant's sentencing statement, and a letter from defendant dated January 8, 2019. In pronouncing sentence, the court explained:

"THE COURT: All right. The Court's tentative decision with respect to sentencing is as follows: As to Count 1, which is the violation of [section 273.5(a)], the Court's intention is to deny probation, sentence [defendant] to the California Department of Corrections for the upper term of five years, said sentence enhanced by one year pursuant to Section 12022, sub[division (b)(1)]; and further enhanced by five years pursuant to Section 12022.7, sub[division (e)], for a total fixed term of 11 years. [¶] … [¶]

"In determining the sentence in this case, the Court has considered the circumstances in aggravation and in mitigation. The mitigation, the defendant's prior performance on probation is satisfactory. And [defense counsel] has raised the mental health issues that [defendant] suffers. In aggravation, the defendant's prior convictions are numerous, and as stated, involved multiple prior violence[-]related convictions. The defendant also has two prior convictions for domestic violence.

"The defendant was armed with a weapon and the injuries that he inflicted on the victim in this case were significant and severe, multiple lacerations that required stitches, a swollen left eye, and numerous contusions, and a broken forearm. The defendant's violent conduct both previously and in this case indicate a serious danger to society. The Court has also considered these factors in selecting the upper term of the

---

5     At the sentencing hearing, defense counsel clarified that defendant was not on felony probation at the time of the present crime.

enhancement under … Section 12022.7, sub[division (e)], and believes the upper terms of five years best serves the interest of justice.

"With respect to count 2, … the Court intends to deny probation and sentence the defendant to the Department of Corrections for the upper term of four years, said sentence enhanced by five years pursuant to … Section 12022.7, sub[division (e)], for the reasons the Court previously stated for Count 1."

Defendant did not object to the trial court's use of any of these factors.

**B. Law**

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court…. The court shall select the term which, in the court's discretion, best serves the interests of justice." (§ 1170, subd. (b) (§ 1170(b)).) In exercising its discretion, the sentencing court "may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing." (Cal. Rules of Court, rule 4.420(b).)[6] "The court shall state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).)

"Only a single aggravating factor is required to impose the upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 728 (*Osband*).) But "the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170(b).) "Although a single factor may be relevant to more than one sentencing choice, such dual or overlapping use is [generally] prohibited," and the court "cannot use a single fact both to aggravate the base term and to impose an

---

[6] All references to rules are to the California Rules of Court.

7

enhancement."**7** (*People v. Scott*, *supra*, 9 Cal.4th at p. 350.) "To comply with section 1170(b), a fact charged and found as an enhancement may be used as a reason for imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so." (Rule 4.420(c).)

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "[W]hen [a defendant] claims the trial court made an impermissible dual use of a fact as both an enhancement and an aggravating factor [citation], the reviewing court looks at whether the trial court *could have* based the aggravating factor on evidence *other* than that which gave rise to the enhancement. If so, the sentence may stand." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775.) In other words, " '[i]mproper dual use of the same fact for imposition of both an upper term and [an] … enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." ' " (*Osband*, *supra*, 13 Cal.4th at p. 728.) The error is harmless and resentencing is not required where "the court could have selected disparate facts from among those it recited to justify the imposition of both a consecutive sentence and the upper term, and … we [can] discern no reasonable probability that it would not have done so." (*Id*. at p. 729.)

## C.    Analysis

Defendant argues that the trial court erroneously relied on his use of a weapon and his infliction of Debra's injuries to impose not only the weapon use and great bodily

---

**7**    We note that although section 1170 prohibits a court from using the same fact to impose both the upper term for an offense and an enhancement, a court may use the same fact to impose the upper term for an offense and the upper term for an enhancement. (See *People v. Chism* (2014) 58 Cal.4th 1266, 1336 [" 'the dual use of a fact or facts to aggravate both a base term and the sentence on an enhancement is not prohibited' "]; *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1198 [same].)

injury enhancements, but also the upper term on count 1.[8]  Although the trial court did not specifically identify which of the aggravating factors it relied on to impose the upper term, there were sufficient aggravating factors to separately support imposition of the upper term without reliance on the facts underlying the two enhancements.

As noted above, the probation report identified three aggravating circumstances: defendant had engaged in violent conduct that indicated he was a serious danger to society, he had numerous prior convictions, and his prior performance on probation was unsatisfactory.  None of these circumstances pertained to defendant's use of a weapon or his infliction of Debra's injuries.  At the sentencing hearing, the trial court listed four aggravating factors:  two that supported the two enhancements—defendant's use of a weapon and his infliction of Debra's injuries—and two that were *unrelated* to the enhancements—defendant's numerous prior convictions and his violent conduct indicating a serious danger to society.  These final two factors, which were valid aggravating circumstances pursuant to rule 4.421, were both available to support imposition of the upper term on count 1.  Only one was needed, and the court could have selected either one.  Thus, even though the trial court did not separately identify factors to support the upper term, it could have specified either of these two available factors and we see no reasonable probability that it would not have done so.  Any error was harmless. (*Osband*, *supra*, 13 Cal.4th at pp. 728–729.)

Defendant, however, relies on *People v. Roberson* (1978) 81 Cal.App.3d 890 (*Roberson*), overruled on other grounds by *People v. Crowson* (1983) 33 Cal.3d 623, where the defendant pled guilty to armed robbery and admitted two prior convictions. (*Roberson*, at p. 893.)  At sentencing, when the trial court imposed the upper term for robbery, it expressly relied on the use of a weapon and a ski mask that showed a threat of

---

[8]     Defendant notes the trial court also relied on the same factors to impose the upper term on count 2.  That term, however, was stayed.

9

violence, a pattern of violent conduct, and the prior convictions that showed excessive criminality. (*Ibid.*) The court also imposed a weapon use enhancement. (*Ibid.*) On appeal, the court concluded the trial court had improperly relied on the fact of weapon use twice. (*Ibid.*)

We find the present case distinguishable from *Roberson.* There, the trial court expressly considered the defendant's weapon use to both aggravate the base term and enhance the sentence. (*Roberson*, *supra*, 81 Cal.App.3d at p. 893.) Here, the trial court did not expressly identify which facts it relied upon to aggravate the term. The court did not expressly rely on any fact more than once and we would be speculating to conclude it had implicitly done so. Rather, we presume the court knew and followed the law. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) This presumption and the court's statements showing it was relying on adequate and appropriate aggravating factors suffice to show the court properly imposed the upper term. Furthermore, *Roberson* did not consider whether the error might have been harmless, perhaps because it predated *Osband* and *Garcia* by nearly 20 years. (See *Osband*, *supra*, 13 Cal.4th at p. 728; *People v. Garcia*, *supra*, 32 Cal.App.4th at p. 1775.)

## III.  *Boykin-Tahl*

Defendant next contends the trial court erred in failing to advise him of his *Boykin-Tahl* rights prior to accepting the parties' stipulation that he had a prior domestic violence conviction. We agree the trial court erred, but again conclude the error was harmless.

### A.  Background

Defendant had committed various prior incidents of domestic violence, two of which resulted in misdemeanor convictions. Evidence of his 2013 prior section 273.5(a) conviction was admitted at trial for two purposes—(1) to prove he had a propensity to

10

commit acts of domestic violence and thus committed the current one (Evid. Code, § 1109), and (2) to prove he had suffered a prior domestic violence conviction within the previous seven years and thus could be sentenced under an elevated triad (§ 273.5(f)(1)).

Before trial commenced, the trial court granted the prosecutor's request to admit evidence of two prior convictions pursuant to Evidence Code section 1109, as propensity evidence.[9]

The court also granted defendant's request to address proof of any prior conviction allegations in a bifurcated proceeding.

On the second day of trial, the parties were discussing how the prosecutor could introduce evidence of a prior conviction, and the following exchange occurred:

> "[PROSECUTOR]: Yes. Under Evidence Code—

> "THE COURT: [Evidence Code section] 452.5, sub[division (b)], I think you can prove the convictions through certified records.

> "[PROSECUTOR]: Yes. [¶] … [¶] … So I would be asking to be able to prove the conviction of the defendant of his prior domestic violence case. I still will ask the victim about the events, but briefly and quickly depending on how she actually answers.

> "THE COURT: [Defense counsel]?

> "[DEFENSE COUNSEL]: Are we talking about the [Evidence Code section] 1109 evidence?

> "THE COURT: We are talking about the [Evidence Code section] 1109 evidence.

> "[DEFENSE COUNSEL]: So this is evidence that has to do with his motive or intent?

> "THE COURT: It goes to the underlying acts that were part of the conviction. As I read the case law, that [Evidence Code section] 452.5, sub[division (b)], permits that.

---

**9**      Ultimately, the prosecutor introduced only one.

"[DEFENSE COUNSEL]: So we're not talking about the prior conviction as a status enhancement. We are talking about evidence of the conviction.

"[PROSECUTOR]: Under [Evidence Code section] 1109 which allow[s] for us to put in prior bad acts of character evidence.

"THE COURT: Right. It says it can be used for any purpose.

"[PROSECUTOR]: Yes.

"[DEFENSE COUNSEL]: I have [Evidence Code section] 452.5[, subdivision (b)]. I'll submit to the Court. [¶] … [¶]

"[PROSECUTOR]: So I do have an actual certified court docket that I would be using for that, but I don't know if counsel, rather than submitting that and giving it to the jury, would like to do that a different way. [¶] … [¶]

"[DEFENSE COUNSEL]: Your Honor, all I would like to do is object to the procedure for the record. It's not clear to me that that's the appropriate procedure. I'll submit to the Court with my objection in mind.

"THE COURT: All right. Thank you…."

The following day, the parties stipulated that on November 26, 2013, defendant was convicted of a misdemeanor violation of section 273.5(a) against Debra.

After the testimony was concluded, the court read the stipulation to the jury. During instructions, the court instructed the jury that it could consider defendant's prior domestic violence conviction as propensity evidence showing he was inclined to, and did, commit the current offense.[10] The reporter's transcript does not reflect that the trial court advised defendant of his constitutional rights before the stipulation was made or that defendant waived his rights.

---

[10] The court instructed in part: "If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit domestic violence and based on that decision also conclude that the defendant was likely to commit and did commit the offenses involving domestic violence as charged here in Count 1."

12

The court conducted a bifurcated proceeding on the prior conviction allegation under section 273.5(f)(1). The court admitted a certified copy of the docket of the November 26, 2013 prior section 273.5(a) conviction into evidence. The court then found the allegation of defendant's prior conviction true.

### B. Law

#### 1. Section 273.5(f)(1)

When a defendant is convicted of violating section 273.5(a), the trial court may impose a prison sentence from the triad of two, three, or four years. (§ 273.5(a).) However, when a defendant is convicted of violating section 273.5(a) within seven years of a previous conviction of section 273.5(a) (or other similar domestic violence offense), the court may impose a sentence from the elevated triad of two, four, or five years. (§ 273.5(f)(1).) Thus, proof of a prior section 273.5(a) conviction exposes a defendant to increased punishment under section 273.5(f)(1).

#### 2. Boykin-Tahl Advisements

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary." (*People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*); see also *Boykin*, *supra*, 395 U.S. at pp. 242–244; *Tahl*, *supra*, 1 Cal.3d at pp. 130–133.) "As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each." (*Cross*, at p. 170.) *In re Yurko* (1974) 10 Cal.3d 857 extended application of this rule to cases in which a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment. Before admitting a prior conviction allegation, the defendant must be advised "of the precise increase in the term or terms which might be imposed." (*Id*. at p. 864.) A trial court's "failure to properly advise a defendant of his or

13

her trial rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' " (*Cross*, at p. 179.)

### 3. Analysis

Defendant argues the trial court was required, under *Cross*, to give him *Boykin-Tahl* advisements before accepting his stipulation. The People counter that the advisements were not necessary here because defendant's prior conviction was admitted as propensity evidence under Evidence Code section 1109 and did not result in increased punishment; defendant's sentence was enhanced.[11] They explain that because the trial court found the allegation true in a bifurcated proceeding, the stipulation was not an admission to all facts necessary to impose a greater punishment. They perfunctorily cite *Cross*, but do not discuss it.

In *Cross*, as in this case, the defendant was charged with a violation of section 273.5(a) and it was further alleged that he had a prior section 273.5(a) conviction for the purpose of section 273.5(f)(1).[12] (*Cross*, *supra*, 61 Cal.4th at p. 168.) At trial, the defendant stipulated to the prior conviction without being advised of or waiving his *Boykin-Tahl* rights. (*Id*. at p. 169.) The jury convicted the defendant of the charged crime and also found true the prior conviction allegation. The trial court sentenced defendant to the upper term of five years. (*Ibid*.) The Supreme Court reversed, finding nothing in the record that showed the defendant was provided with the proper *Boykin-Tahl* advisements, which were required because he admitted by stipulation all facts

---

[11]     Defendant's punishment pursuant section 273.5(f)(1) was not the result of an enhancement; it was the result of an alternative sentencing scheme with an elevated sentencing triad. But the distinction is not relevant here. *Cross* stated that in *Yurko*, it had not parsed enhancements and alternative sentencing schemes: "Such nomenclature played no role in our analysis. What mattered was that the defendant's unwarned admission of prior convictions automatically exposed him to 'added penalties.' " (*Cross*, *supra*, 61 Cal.4th at p. 176, citing *In re Yurko*, *supra*, 10 Cal.3d at p. 863.)

[12]     Former section 273.5, subdivision (e).

14

necessary for imposition of a greater punishment. (*Id*. at pp. 174, 180.) The court explained that "section 273.5(f) authorized the trial court to impose a greater punishment on [the defendant] if the jury found that he was guilty of the charged offense under section 273.5(a) and that he had previously been convicted of violating section 273.5. [The defendant] stipulated that he had previously been 'convicted of a felony violation of … Section 273.5.' Because he admitted 'every fact necessary to imposition of the additional punishment other than conviction of the underlying offense' [citation], he was entitled to receive *Boykin-Tahl* warnings before he made this admission." (*Cross*, at p. 174.) The defendant's "unwarned stipulation to the truth of the prior conviction allegation did not merely waive a jury trial; it waived any trial at all." (*Id*. at p. 173.) Thus, the trial court erred in failing to provide these warnings. (*Id*. at pp. 174–179.)

Here, defendant's stipulation, like the one in *Cross*, admitted every fact necessary to imposition of the increased punishment under section 273.5(f)(1). And the record contains no indication that defendant's stipulation was knowing and voluntary. Thus, as in *Cross*, the trial court erred in failing to provide *Boykin-Tahl* warnings before accepting the stipulation. But in this case, defendant's stipulation did not deny him a trial on the prior conviction. Defendant waived a jury trial, but he received a court trial. Furthermore, the prosecution introduced evidence of the docket of the prior conviction, which alone was sufficient to prove the allegation. In *Cross*, the jury found the prior conviction allegation true based on the *stipulation* and, as a result, the defendant was sentenced to the upper term of five years. (*Cross*, *supra*, 61 Cal.4th at p. 168.) Here, by contrast, the jury was instructed it could consider the evidence only for propensity purposes, and it was the court that found the prior conviction allegation true in a bifurcated proceeding outside the jury's presence, based on evidence independent of the stipulation. If the trial court also erroneously relied on defendant's stipulation as evidence to support the allegation, it was harmless.

15

Accordingly, we conclude the trial court's error in accepting defendant's stipulation without advising defendant of his *Boykin-Tahl* rights and obtaining a waiver was harmless error.

## IV.    Conclusion

Because we conclude both errors were harmless, we also conclude defendant was not prejudiced by defense counsel's failure to object to both issues.  As a result, defendant did not suffer ineffective assistance of counsel.

## **<u>DISPOSITION</u>**

The judgment is affirmed.