# IN THE SUPREME COURT OF CALIFORNIA

In re VICTOR RAUL TELLEZ

on Habeas Corpus.

S277072

Fourth Appellate District, Division One
D079716

San Diego County Superior Court
SCE369196

---

August 26, 2024

Justice Evans authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Jenkins concurred.

Justice Liu filed a concurring opinion, in which Justice Evans concurred.

---

In re TELLEZ

S277072


Opinion of the Court by Evans, J.


Under the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code,[1] § 6600 et seq.), a person who has been convicted of a qualifying sexual offense linked to a diagnosed mental disorder may be civilly committed to a state hospital for treatment upon completion of the person's prison term. The SVPA defines "[d]iagnosed mental disorder" as "includ[ing] a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).) There is no statutory limit on the amount of time a person may be committed to a state hospital for treatment under the SVPA. (See § 6604.)

Petitioner Victor Raul Tellez was charged with three counts of violating Penal Code section 288, subdivision (a) (lewd or lascivious act upon a child), and faced a maximum prison term of 12 years. As part of a plea deal, and on the advice of his attorney, Tellez pleaded guilty to a single felony violation of Penal Code section 288, subdivision (a), and was sentenced to three years in prison. Penal Code section 288, subdivision (a), is a qualifying offense for the SVPA. Tellez was not told by the court, in entering his guilty plea, that the conviction would make

---

[1] Subsequent unspecified statutory provisions refer to the Welfare and Institutions Code.

him eligible for commitment as a sexually violent predator. After Tellez completed his three-year prison term, the District Attorney of the County of San Diego initiated SVPA proceedings for Tellez's involuntary commitment to a state hospital.

Tellez asserts he was not advised of the possibility of a civil commitment by counsel and that he would not have accepted the plea deal had he been properly informed of its potential SVPA consequences. Tellez argues that his counsel's failure to so advise him was a violation of his constitutional right to effective assistance of counsel. We first assess whether Tellez has demonstrated he was prejudiced by his counsel's failure to advise him of the SVPA consequences of accepting the plea deal. We conclude that he has not. Tellez has provided insufficient evidence that he would not have accepted the plea deal had he been advised of the SVPA consequences by his counsel, and thus, has not established that he was prejudiced. Because Tellez has not demonstrated he was prejudiced by his counsel's failure to advise, we need not reach the merits of his deficient performance claim. However, as both parties in this litigation note, commitment under the SVPA constitutes a significant deprivation of liberty, and a defendant should be made aware of the possibility of such a commitment. Both parties request, and we agree it is appropriate, that we exercise our supervisory powers to require trial courts to explicitly advise criminal defendants of potential SVPA consequences of a guilty or nolo contendere (no contest) plea.

## I. CIVIL COMMITMENT UNDER THE SEXUALLY VIOLENT PREDATOR ACT

The process for committing an individual under the SVPA begins when the California Department of Corrections and Rehabilitation (CDCR) refers an incarcerated individual for an

initial mental evaluation. (§ 6601, subd. (a).) Typically, this step must be done at least six months prior to the individual's scheduled prison release date. (*Ibid.*) To decide who it refers for evaluation, the CDCR first screens incarcerated individuals' "social, criminal, and institutional history" and identifies individuals who have committed qualifying sexually violent predatory offenses. (*Id.,* subd. (b).) If the CDCR determines someone is "likely to be a sexually violent predator," it refers that person to the State Department of State Hospitals (DSH) for a full evaluation of whether that individual meets the SVPA's criteria for civil commitment. (*Ibid.*)

The DSH is then required to apply a standardized assessment protocol to identify diagnosable mental disorders and other factors known to be associated with the risk of committing another sexual offense. (§ 6601, subd. (c).) Risk factors include "criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (*Ibid.*) This standardized assessment involves separate evaluations by two different practicing psychiatrists or psychologists. (§ 6601, subd. (d).) If both evaluators agree that the individual is likely to reoffend without appropriate treatment and custody in a secure facility, the DSH Director forwards a request to the county prosecutor to petition for the individual's commitment to a state hospital.[2] (*Ibid.*)

The DSH Director may only file a request for commitment if both evaluators concur that the person meets the specified criteria for commitment. (§ 6601, subd. (f).) If the county

---

[2] The statutory scheme sets out steps to be taken if the originally appointed evaluators disagree as to their assessment. (See § 6601, subds. (e), (f).)

prosecutor agrees with the assessment, they file a petition in the superior court for commitment under the SVPA. (*Id.*, subd. (i).)[3] The superior court judge then reviews the petition and conducts a probable cause hearing to determine whether the defendant is likely to engage in sexually violent predatory criminal behavior upon their release. (§ 6602, subd. (a).) The defendant is entitled to assistance of counsel for this hearing and remains in custody until the hearing is completed. (*Ibid.*) If the superior court judge determines that there is no probable cause to pursue the commitment, the petition is dismissed. (*Ibid.*) If the judge determines that there is probable cause, the court must conduct a trial to determine whether the individual qualifies as a "sexually violent predator." (§ 6600, subd. (a)(1).) The individual remains in custody until the trial is completed. (*Ibid.*)

At the trial, the state bears the burden of proving beyond a reasonable doubt that the individual falls within the statutory definition of a sexually violent predator. (§ 6604.) The defendant is entitled to the assistance of counsel and the right to a jury trial. (§ 6603, subd. (a).) If the defendant opts for a jury trial, then the jury's verdict must be unanimous. (*Id.*, subd. (g).) If the trial results in a finding that defendant falls within the statutory definition of a sexually violent predator, the defendant is then committed to a state hospital for treatment for an indefinite amount of time. (§ 6604.) On average, full

---

[3] The county prosecutor may retain its own expert to independently review and testify whether an individual undergoing SVPA proceedings qualifies for civil commitment, but that expert cannot compel an individual to be interviewed or participate in testing before trial. (*Needham v. Superior Court* (July 1, 2024, S276395) 16 Cal.5th 333.)

adjudication of commitment proceedings lasts six years, and for one in four people, the process can last over a decade.[4] (Cal. Sex Offender Management Bd., Sexually Violent Predator Project: Introduction & Duration of SVP Detainee Status (Sept. 2020) p. 9 <https://casomb.org/docs/CASOMB_SVP_Intro_and_Detainee _Status_FINAL_2021-05.pdf> [as of Aug. 26, 2024].)[5] And as the Attorney General points out, the vast majority of SVPA evaluations do not result in civil commitment. (See Cal. State Auditor, Report 2014–125 (Mar. 2015) pp. 40–41 <https://www.auditor.ca.gov/pdfs/reports/2014-125.pdf> [as of Aug. 26, 2024].)

An individual who is committed under the SVPA is entitled to a yearly evaluation to determine whether they may be conditionally or unconditionally discharged. (§ 6604.9.) Individuals who are conditionally released may have their identities made public and are monitored by a global positioning system (GPS) until they are unconditionally discharged. (§§ 6608.1; 6609.) There are approximately 950 people currently committed to state hospitals under the SVPA. (Cal. Sex Offender Management Bd., 2023 Year End Report (Feb. 2024) p. 31 <https://casomb.org/pdf/2023_Year_End_Report.pdf> [as of Aug. 26, 2024].)

---

[4] Many factors can result in postponement of a final adjudication, including continuances to allow for an individual's further treatment and evaluation.

[5] All internet citations in this opinion are archived by year, docket number and case name at <http://www.courts.ca.gov/ 38324.htm>.

## II. FACTS AND PROCEDURAL HISTORY

On March 25, 2017, Victor Raul Tellez drank approximately one pint of vodka and went to the Fletcher Parkway Mall in El Cajon, California. While there, Tellez approached three boys who were sitting down in a "relaxation/waiting area" near the mall's food court. Tellez laid down behind the boys and ran his open hand down the backs of two of them, ages 9 and 10. The boys got up and left, and Tellez followed. Tellez then approached a 13-year-old girl from behind. He wrapped his arms around her and pulled her closer to him while saying "Come here." She pulled away from him. Mall security was contacted, and they alerted the police who arrested Tellez.

Tellez was charged with three separate felony counts of lewd or lascivious acts upon a child in violation of Penal Code section 288, subdivision (a). On the advice of his attorney, Tellez accepted a plea deal, under which he pleaded guilty to one charge of Penal Code section 288, subdivision (a) and was sentenced to three years in prison; the other two felony charges were dismissed. Penal Code section 288, subdivision (a), is a qualifying offense for the SVPA. (§ 6600, subd. (b).) Tellez maintains, and the available evidence corroborates, that he was not advised by his attorney regarding the possibility of an SVPA commitment. "Sexually Violent Predator Law" was specifically listed on defendant's plea form as a "possible consequence[]" of conviction; yet this consequence was not circled, while other possible consequences were.

Upon completing his prison term in fall 2019, Tellez was released to the custody of the San Diego County Sheriff's Department and the District Attorney initiated civil

commitment proceedings against him under the SVPA. Tellez has remained in the Sheriff's Department's custody since completing his prison term.

In 2021, Tellez filed a petition for writ of habeas corpus in the San Diego County Superior Court. Tellez alleged that his counsel's failure to advise him that accepting the plea deal could subject Tellez to SVPA proceedings constituted ineffective assistance of counsel. (*In re Tellez* (2022) 84 Cal.App.5th 292, 295 (*Tellez*).) He also alleged that, as a result of inadequate investigation, his counsel failed to obtain a favorable and potentially exculpatory psychological evaluation for Tellez. (*Id.* at p. 295.) The superior court summarily denied Tellez's psychological evaluation claim as untimely, and then, after issuing an order to show cause on the failure to advise Tellez of potential SVPA consequences, denied that claim as well. (*Tellez, supra*, 84 Cal.App.5th at pp. 295–296.) In 2022, Tellez filed a petition for writ of habeas corpus in the Court of Appeal. (*Id.* at p. 296.) That court summarily denied Tellez's petition as procedurally barred and failing to state a prima facie case for relief. (*Ibid.*)

Tellez then petitioned this Court for review. We granted the petition for review and transferred the matter back to the Court of Appeal with directions to vacate the summary denial and to issue an order directing the Secretary of CDCR to show cause why Tellez should not be granted relief on his ineffective assistance of counsel claim. (*Tellez, supra*, 84 Cal.App.5th at p. 296.) The Court of Appeal then issued a published opinion, again denying Tellez's claim. (*Id.* at pp. 295–304.) The Court of Appeal held that " 'prevailing and professional' " norms did not require Tellez's counsel to advise him of the SVPA consequences of a guilty plea, and that regardless, Tellez had not

demonstrated prejudice. (*Tellez*, *supra*, 84 Cal.App.5th at pp. 298–304.)

Tellez again petitioned this Court for review. We granted review and instructed the parties to brief whether constitutionally effective assistance of counsel requires an advisement that a guilty plea may subject the defendant to commitment proceedings under the SVPA, and if so, whether Tellez was prejudiced by his counsel's failure to so advise him. We also directed the parties to brief whether we should exercise our supervisory powers to require that criminal defendants be advised of potential SVPA consequences prior to entering a plea.

## III. DISCUSSION

We hold that Tellez has not sufficiently demonstrated he was prejudiced by his counsel's actions. Because Tellez has not demonstrated prejudice, we do not address whether his counsel's performance was constitutionally deficient. However, like both parties in this litigation, we recognize the significant effect that potentially indefinite commitment to a state hospital under the SVPA can have on a person. Accordingly, we exercise our supervisory powers to require trial courts, where relevant, to inform defendants of the potential for SVPA consequences when pleading guilty or no contest to a qualifying offense.

### A. Tellez Has Not Demonstrated that He Was Prejudiced by His Attorney's Failure to Advise Him of the Potential SVPA Consequences of a Guilty Plea.

Tellez urges that his counsel failed to provide him with effective assistance by not advising him of the potential SVPA consequences of his plea. Because we conclude Tellez has not established he suffered prejudice from any such alleged failure,

8

we do not consider whether a failure to advise of SVPA consequences would constitute ineffective assistance of counsel.

Tellez, who faced a maximum sentence of 12 years had he proceeded to trial and lost, accepted a plea deal, under which he was sentenced to three years in prison and the remaining charges against him were dismissed. Tellez argues that his attorney's failure to advise him of the potential SVPA consequences of pleading guilty to the single Penal Code section 288, subdivision (a), charge under the plea deal prejudiced him, as Tellez would not have accepted the deal had he known it would potentially qualify him for SVPA commitment.

An ineffective assistance of counsel claim has two elements: a defendant must show that their counsel's performance was deficient, *and* that this deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) A reviewing court can begin an ineffective assistance of counsel inquiry with either element and need not address both elements if one is not satisfied. (*Id.* at p. 697 ["[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"]; *In re Marquez* (1992) 1 Cal.4th 584, 602 ["When there has been no showing of prejudice, we need not determine whether trial counsel's performance was deficient"].) Indeed, it is often preferable for a court to dismiss an ineffective assistance of counsel claim solely for lack of prejudice. (*Strickland*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . .that course should be followed"]; see *People v. Johnsen* (2021) 10 Cal.5th 1116, 1168.) To satisfy *Strickland*'s prejudice prong, a defendant "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland, supra,* 466 U.S. at p. 694.)

In evaluating ineffective assistance claims asserting a failure to provide adequate advisements, we consider the "totality of the circumstances," including the "defendant's priorities in seeking a plea bargain" and "the defendant's probability of obtaining a more favorable outcome if he had rejected the plea." (*People v. Espinoza* (2023) 14 Cal.5th 311, 320 (*Espinoza*); *Lee v. United States* (2017) 582 U.S. 357, 367 (*Lee*)). "These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza, supra,* 14 Cal.5th at p. 321.) A defendant must provide " 'objective evidence' " to corroborate assertions of prejudice, which can include "facts provided by declarations, contemporaneous documentation of the defendant's [collateral] concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Id.*, quoting *People v. Vivar* (2021) 11 Cal.5th 510, 530 (*Vivar*).)

In *Vivar, supra,* 11 Cal.5th 510, we held that a criminal defendant who was later deported to Mexico had sufficiently demonstrated he was prejudiced by his counsel's failure to advise him of the immigration consequences of accepting a plea deal. While *Vivar* involved a demonstration of prejudice in the context of a motion to withdraw a plea under Penal Code section 1473.7, its analysis is helpful here. The defendant in *Vivar* supplied a declaration attesting he would not have accepted a plea deal had he known of its immigration consequences. (*Vivar, supra,* 11 Cal.5th at p. 530.) Yet he also provided other evidence, including recollections and contemporaneous notes from his counsel that he "was indeed concerned about the 'consequences' of his plea" (*ibid.*) and a series of uncounseled

letters he had written to the court "at or near the time of his plea" (*ibid.*; see *id.* at pp. 530–531). Those letters detailed Vivar's explicit desire to remain in the U.S. as well as his connections to his community, including his extensive immediate family who were all U.S. citizens who lived in California. (*Id.* at p. 531.) Vivar also documented his lack of connections to Mexico, including how he found it "difficult to function in Mexican society because people treat [him] like an outsider." (*Id.* at p. 530.) We held that those letters provided an independent and objective indication that Vivar would have not accepted the plea deal had he known it would lead to his deportation. (*Id.* at p. 534.)

In *Espinoza, supra*, 14 Cal.5th 311, a Penal Code section 1473.7 case like *Vivar*, we similarly held that the defendant had sufficiently established prejudice under *Strickland*. Espinoza, a Mexican immigrant to the U.S. who built his life in California, pleaded no contest to a number of charges on the advice of his attorney, who had told him "everything was going to be fine" if he did so. (*Espinoza, supra*, 14 Cal.5th at p. 318.) Espinoza's attorney did not inform him that pleading no contest to the charges would put his permanent resident status at risk. (*Ibid.*) And as explained in his declaration to the court, Espinoza misunderstood the court's advisement on the issue, mistakenly believing it would not apply to him because he had legal permanent residency. (*Id.* at p. 319.) Espinoza first realized the immigration consequences 12 years later when, after returning from an international trip, immigration officials stopped him and seized his permanent resident card. (*Ibid.*) On review, we held that Espinoza demonstrated prejudice from his counsel's failure to advise him that his plea deal could have immigration consequences. We noted that Espinoza had lived in the state for

more than two decades, where his immediate family also lived. (*Id.* at p. 322.) We also emphasized a number of letters from family, friends, community members, clients, and employers documenting Espinoza's ties to and desire to remain in the community, as well as the fact that there were "immigration-safe" alternatives his counsel could have pursued. (*Id.* at p. 317.) From this evidence, we concluded that Espinoza's priority was to remain in his community, and that accordingly, he would have likely not pleaded no contest had he known of its immigration ramifications. (*Id.* at p. 325.)

The nature and type of evidence introduced in *Vivar* and *Espinoza* is informative. We note that neither case, however, creates a baseline or minimum requirement for the type of evidence necessary to establish prejudice under *Strickland*.

To substantiate his claim, Tellez relies primarily on his own declaration, prepared more than three years after his conviction, that he would not have accepted the plea deal had he known of the potential SVPA consequences. But unlike the defendants in *Vivar* and *Espinoza*, Tellez has not provided sufficient evidence to demonstrate that a different outcome would be reasonably probable had he been advised by his attorney of the SVPA consequences. (See *Lee, supra*, 582 U.S. at pp. 364–365.)

In reaching this conclusion, we note the limited nature of Tellez's declaration, which does not provide any details about *why* he would not have pleaded guilty had he known about the SVPA consequences. Indeed, the only thing Tellez says in his declaration about the factors that influenced his decision to plead guilty suggest that he assumed he would be found guilty anyway. For example, he states that "[m]y attorney told me that I should plead guilty because I would not win at trial." Tellez

has also not identified that an SVPA-safe outcome could have been attained through further plea negotiations, such as pleading to a non-qualifying offense.

Tellez's postconviction statement that he would not have accepted the plea deal had he been advised of the potential SVPA consequences does not satisfy his burden of establishing a reasonable probability that he would not have accepted the plea absent counsel's alleged errors, and thus, fails to satisfy the prejudice prong of *Strickland*. (See *Strickland*, *supra*, 466 U.S. at p. 696.) Finding this requirement unsatisfied, we do not reach the merits of Tellez's claim that his counsel rendered deficient performance, and we leave open the constitutional question it presents. (See *In re Welch* (2015) 61 Cal.4th 489, 516 ["[W]e need not definitively resolve whether counsel's performance was adequate because . . . [petitioner] has not made a sufficient showing of prejudice here"].)

## B. We Agree with Both Parties that it is Appropriate to Exercise Our Supervisory Authority to Require California Trial Courts to Advise Defendants Where Relevant of the Potential SVPA Consequences of a Guilty Plea.

This Court is empowered "to formulate rules of procedure where justice demands it." (*Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399, 410; see Code Civ. Proc., § 187.) We have used our supervisory authority over the courts to establish a number of judicial procedures such as the giving of judicial advisements under certain circumstances. (See, e.g., *In re Yurko* (1974) 10 Cal.3d 857, 864 (*Yurko*) [requiring courts to advise criminal defendants of the consequences of being deemed a habitual criminal]; *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 (*Bunnell*) [requiring courts to advise criminal

defendants of specific trial rights and ensure that defendants understand the nature of the charges levied against them]; *People v. Howard* (1992) 1 Cal.4th 1132, 1175 (*Howard*) [requiring trial courts to continue to expressly advise criminal defendants of their self-incrimination, confrontation, and jury-trial rights].) Today, we exercise our supervisory powers to require trial courts to advise criminal defendants of the potential SVPA consequences when they plead guilty or no contest to an SVPA-qualifying offense or when the court is aware that a defendant has previously been convicted of such an offense and is pleading guilty or no contest to a new offense. (See § 6600, subd. (a)(2)(A).)

In *Bunnell, supra,* 13 Cal.3d at pages 601–606, we exercised our supervisory powers to require that defendants be advised of their constitutional rights before entry of a "slow plea," i.e., submission of the case on the preliminary hearing transcript. Although we did not say that it was constitutionally compelled, we required that "in all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, registration requirements, . . . and, in appropriate cases the possibility of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302 [a precursor of the contemporary SVPA]." (*Id.* at p. 605.) In reaching that conclusion, we reasoned that any potential burden of informing criminal defendants of the full extent of the consequences of a potential plea "will be far outweighed by" the benefit of ensuring that any waiver by defendants is both voluntary and intelligent. (*Id.* at pp. 605–606.)

In *Howard, supra,* 1 Cal.4th 1132 at pages 1175–1180, we exercised our supervisory powers to require trial courts to

14

continue to advise defendants of their waiver of specific constitutional rights before a guilty or no contest plea even though we no longer deemed such advisements necessary under federal law. We noted that although federal law did not obligate the advisements, "the essential wisdom of explicit waivers remains beyond question." (*Id.* at p. 1179.) We also affirmed the concept that "trial courts 'would be well advised to err on the side of caution and employ the time necessary to explain adequately and to obtain express waivers of the rights involved.' " (*Id.*, quoting *In re Tahl* (1969) 1 Cal.3d 122, 132.)

Here, we believe that similar prudential and fairness considerations support a rule requiring trial courts to advise criminal defendants of potential SVPA consequences of a guilty or no-contest plea. (See *Yurko*, *supra*, 10 Cal.3d at p. 864 [informing criminal defendants of potential consequences of an admission would "achieve[] justice for both the accused and the state"].) It is a significant deprivation of a person's liberty to be detained for years while SVPA proceedings are conducted, and potentially indefinitely after being committed under the SVPA. This deprivation may occur without the defendant having committed any additional criminal acts beyond those that are the subject of the guilty or no-contest plea. Furthermore, the impact that being labelled a "sexually violent predator" can have on a person's life after release can be severe, including mandatory public disclosure of such status and other personal information upon a community member's request. (See §§ 6608.1; 6609 [noting conditions of release, including disclosure of identifying information to the public].) Meanwhile, it is a relatively minor burden to advise criminal defendants of potential SVPA consequences. Although we are mindful of imposing additional duties on trial courts, we conclude that the

benefit of advising criminal defendants of the potential SVPA consequences of a guilty plea significantly outweighs the administrative burden. (See *Bunnell, supra,* 13 Cal.3d at p. 605 [the burden of a new supervisory rule can be outweighed by the benefit of ensuring a criminal defendant understands the consequences of pleading guilty].)

Similar to the advisements we mandated in *Bunnell* and *Howard*, we now require all California trial courts to advise criminal defendants who are pleading guilty or nolo contendere to an offense enumerated in the SVPA, or in instances where the court is aware that the defendant has a prior conviction for such an offense, of potential SVPA repercussions. *Bunnell* and *Howard* involved the duty to advise as to direct plea consequences. Whether commitment under the SVPA is characterized as a collateral or direct consequence, we note the particularly significant imposition on liberty a defendant faces under these circumstances, and we exercise our authority to impose an advisement duty here. Nothing we say here is intended to undermine the long-recognized distinction generally requiring court advisement only as to direct plea consequences. (See *People v. Villalobos* (2012) 54 Cal.4th 177, 181; *People v. Segura* (2008) 44 Cal.4th 921, 931, fn. 6.)

Specifically, in a case where a defendant will plead guilty or no contest to a sexually violent offense as defined in the SVPA (§ 6600, subds. (a)(2), (b)), or the court is aware that the defendant has a prior conviction for a sexually violent offense, the trial court should advise the defendant along the following lines: "At the end of your sentence for this offense, you may be subject to screening by the State Department of State Hospitals to determine whether you qualify for trial as a sexually violent predator, which could result in your being committed to a secure

16

medical facility indefinitely." To ensure the record is complete, the court should also inquire whether the parties discussed the possibility of a disposition involving a plea to an offense that is *not* a sexually violent offense.

The rule we adopt here applies solely to individuals pleading guilty or no contest to SVPA-qualifying offenses. It does not impose additional admonition requirements in the taking of other pleas. This rule shall apply prospectively from the date this opinion becomes final.

## IV. DISPOSITION

We affirm the judgment of the Court of Appeal on the limited ground that Tellez has not demonstrated prejudice; we do not reach the question of whether counsel provided ineffective assistance. We exercise our supervisory powers to require trial courts, going forward, to advise criminal defendants of the potential SVPA consequences of a guilty or no contest plea, along the lines set out herein.

**EVANS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

In re TELLEZ

S277072


Concurring Opinion by Justice Liu


I join the court's decision to require trial courts to advise defendants entering a guilty or no contest plea to a Sexually Violent Predators Act (SVPA) qualifying offense that their plea subjects them to potential indefinite civil commitment to a secure medical facility. (Maj. opn., *ante*, at pp. 16–17.) As the court notes, civil commitment under the SVPA is a "significant deprivation of liberty." (*Id.* at p. 15.) " '[J]ustice demands' " the exercise of our supervisory power to ensure that defendants are aware of the SVPA consequences of their plea. (*Id.* at p. 13.)

I would go further to resolve an underlying issue that the parties have fully briefed: whether defense counsel have a constitutional duty to advise their clients of the SVPA consequences of a potential plea. The answer, under established Sixth Amendment principles, is yes. In this case, counsel's failure to advise defendant Victor Tellez of the SVPA consequences of his plea was constitutionally deficient performance.

I also write to underscore that today's new supervisory rule is consistent with one we announced a half century ago in *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 (*Bunnell*). *Bunnell* required courts to advise defendants of all "direct consequences" of their guilty or no contest plea, including, specifically, the possibility of civil commitment under the prior sex offender commitment statute. (*Ibid.*) Although today's

1

opinion declines to say whether civil commitment under the SVPA should be classified as a "collateral" or "direct" consequence of conviction, the answer to that question is straightforward under *Bunnell*. Commitment under the SVPA is a "direct" consequence of conviction, just as it was under the prior statute.

## I.

The federal and state constitutions guarantee a criminal defendant the right to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).) This "right entitles the defendant not to some bare assistance but rather to *effective* assistance," that is, " 'the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' " (*Ledesma*, at p. 215.) A defendant challenging a conviction on the ground that counsel was ineffective must show "counsel's performance was deficient" and "the deficient performance prejudiced the defense." (*Strickland*, at p. 687; accord, *Ledesma*, at p. 216.)

To establish deficient performance, a defendant must demonstrate "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." (*Strickland*, *supra*, 466 U.S. at p. 687.) Courts examine "whether counsel's assistance was reasonable considering all the circumstances." (*Id.* at p. 688.) In making this determination, courts may look to "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . [as] guides to determining what is reasonable," but "[n]o particular set of detailed rules for counsel's conduct can

satisfactorily take account of the variety of circumstances faced by defense counsel." (*Id.* at pp. 688–689.)

Plea negotiation "is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California constitutions." (*In re Alvernaz* (1992) 2 Cal.4th 924, 933 (*Alvernaz*).) Like "most criminal defendants," Tellez was "faced with the crucial decision whether to plead guilty pursuant to a plea bargain or instead proceed to trial." (*Ibid.*) "Although this decision ultimately is one made by the defendant, it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain. The defendant can be expected to rely on counsel's independent evaluation of the charges, the applicable law, and evidence, and of the risks and probable outcome of trial." (*Ibid.*)

It is undisputed that Tellez's counsel did not advise him of the consequences of pleading guilty to Penal Code section 288, subdivision (a), a SVPA-qualifying offense. The SVPA was an "applicable law" relevant to his decision whether to plead guilty, but it was not discussed. (*Alvernaz, supra,* 2 Cal.4th at p. 933.) Tellez's counsel failed to advise him of these consequences even though "Sexually Violent Predator Law" (item 14) was listed but not circled on his plea form under a heading that says "My attorney has explained to me that other possible consequences of this plea may be: (Circle applicable consequences.)" (The relevant part of the form is reprinted below.) This fact alone may be dispositive for the performance inquiry in this case. As the plea form makes clear, the superior court expects counsel to advise defendants on the SVPA consequences of a guilty plea. The failure of Tellez's public defender to discuss this potential consequence with him, even after being prompted to do so on the

plea form, fell "outside the wide range of professionally competent assistance." (*Strickland, supra,* 466 U.S. at p. 690.) As Tellez argues, either counsel did not understand the relevance of the SVPA to his case, or counsel did understand but failed to advise anyway. Either way, counsel's performance was objectively unreasonable and therefore constitutionally deficient.

**Plea Form Section 7f**



This omission is also contrary to "prevailing professional norms" for criminal defense attorneys in California. (*Strickland, supra,* 466 U.S. at p. 690.) Amici curiae Contra Costa Public Defender and the California Public Defenders Association assert, and the Attorney General does not dispute, that advice on SVPA consequences is standard practice among public defenders in this state. Amici curiae attached evidence from the public defenders of five counties — Los Angeles, San Francisco, Contra Costa, San Bernardino, and Ventura — stating that their practice is to advise clients when a possible SVPA proceeding is a risk of conviction.

An attorney working in the San Bernardino County Public Defender's Office for over two decades declared that his unit is

tasked with providing "education and training on accurately advising clients who have the potential of facing [SVPA] proceedings at the end of their prison sentence." The Training Director at the San Francisco County Public Defender's Office declared that she provides "a training to all attorneys who enter the felony rotation called 'Sex Sentencing,' which includes a section on the SVPA and how to advise [their] clients." The Ventura County Public Defender's policies state, "Prior to the entry of a plea of guilty to [a] sexually violent offense, the attorney should inform the client of such a possible future filing and answer any questions the client may have about the current SVPA law." Two public defenders from Contra Costa and Los Angeles, respectively, declared that it is "standard of practice" for attorneys in their offices to advise clients of potential consequences under the SVPA. And the California Public Defenders Association says it provides "regular trainings on the consequences of the SVPA."

Further, the American Bar Association (ABA) Standards for Criminal Justice section 14-3.2(f) provides that "defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea." (ABA Stds. for Crim. Justice (3d ed. 1999) std. 14-3.2, subd. (f), p. 9; see also ABA Criminal Justice Section, Plea Bargain Task Force Report (2023), p. 26 ["Defense attorneys, at minimum, should review potential collateral consequences with a client before the client accepts a plea."].) The ABA commentary for this standard makes clear that defense counsel should ensure they are aware specifically of the consequences that attend to convictions for "controlled substance crimes and sex offenses because convictions for such offense conduct are,

under existing statutory schemes, the most likely to carry with them serious and wide-ranging collateral consequences." (ABA Stds. for Crim. Justice (3d ed. 1999) com. to std. 14-3.2, subd. (f), p. 127.) Indefinite civil commitment as a "sexually violent predator" is undoubtedly one of the most serious consequences that could result from a criminal conviction. Even if SVPA commitment proceedings are considered a "collateral" rather than "direct" consequence of a conviction (but see *post*, at pp. 8–9), the ABA standards indicate a prevailing professional norm of advisement in this context.

The failure to advise of SVPA consequences is also constitutionally inadequate under the logic of *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*). In *Padilla*, the high court held that failure to advise criminal defendants of the immigration consequences of their guilty plea violates the Sixth Amendment. (*Id.* at pp. 360, 374.) The court noted that it has "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*." (*Id.* at p. 365; see *id.* at p. 364 ["collateral matters" are "those matters not within the sentencing authority of the state trial court"].) Advisement of the risk of deportation was constitutionally required because removal, though civil in nature, is "a particularly severe 'penalty' " that is "intimately related to the criminal process" and has become a "nearly an automatic result for a broad class of noncitizen offenders." (*Id.* at pp. 365–366). Given the risk of deportation's "close connection to the criminal process," the court determined that *Strickland* applied and that immigration advisement is a prevailing professional norm. (*Id.* at p. 366; see *id.* at pp. 366–369.)

Although the Attorney General says civil commitment is not an "automatic" result of a guilty plea to an SVPA-qualifying offense, neither is deportation. Like an order of removal, commitment under the SVPA is imposed only after additional, separate civil proceedings. Further, screening for civil commitment *is* an automatic result for anyone who pleads guilty to an SVPA-qualifying offense and is sentenced to a prison term. (Welf. & Inst. Code, §§ 6600, subd. (a), 6601, subds. (a), (b).) Indeed, because SVPA commitment proceedings can *only* be triggered by a qualifying conviction and are prosecuted by the same district attorney as the original criminal charges, they are even more "enmeshed" with the criminal legal system than immigration consequences, which could result from any law enforcement action, civil or criminal, and are adjudicated in an entirely separate forum. (*Padilla*, *supra*, 559 U.S. at pp. 365–366; see Welf. & Inst. Code, § 6600, subd. (a) [defining "[s]exually violent predator" as a person "who has been convicted of a sexually violent offense" listed in subdivision (b)].) And the Attorney General's suggestion that civil commitment to a state hospital "lacks the punitive character that deportation carries" is especially dubious. Although deportation is often a harsh event that results in severed familial and community ties, so too is civil commitment. Indefinite commitment to a state hospital, while nominally "civil" and imposed for the purpose of treatment, as a practical matter restricts a defendant's liberty in ways indistinguishable from incarceration.

In sum, defense counsel have a constitutional obligation to advise their clients of the potential for civil commitment under the SVPA when entering a plea to a qualifying offense.

## II.

Today's opinion announces a new supervisory rule requiring trial courts to advise defendant of the potential SVPA consequences of their guilty or no contest plea. (Maj. opn., *ante*, at p. 14.) This salutary result breaks little new ground. As the court notes, we announced an analogous rule nearly 50 years ago in *Bunnell*, *supra*, 13 Cal.3d 592. *Bunnell* instructed: "In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute, registration requirements, if any (e.g., [Pen. Code,] § 290; Health & Saf. Code, § 11590), and, in appropriate cases the possibility of commitment pursuant to Welfare and Institutions Code, sections 3050, 3051, or 6302." (*Bunnell*, at p. 605.) Welfare and Institutions Code section 6302, which governed the civil commitment of "Mentally Disordered Sex Offenders," was the precursor to the SVPA. Penal Code sections 290 to 290.024 comprise the Sex Offender Registration Act.

In *Bunnell*, we characterized both sex offender civil commitment and sex offender civil registration as "direct consequences of conviction," and required trial courts to advise defendants as to both before accepting a guilty plea. (*Bunnell*, *supra*, 13 Cal.3d at p. 605.) The SVPA differs from the prior statute in that under the former scheme, the superior court could order civil commitment proceedings in lieu of criminal sentencing for eligible offenders. (See *People v. Moore* (1998) 69 Cal.App.4th 626, 633.) But the statutes share a common purpose: treatment of sex offenders. They both may result in indefinite civil commitment to the state hospital system. Under both regimes, a commitment order could be made only after extensive civil proceedings; it could not be directly ordered by

the superior court. And under both statutes, defendants may suffer both criminal incarceration and civil commitment following the same offense. Thus, civil commitment under the SVPA is no less a "direct" consequence of conviction as civil commitment under the prior sex offender commitment statute.

As noted, *Padilla* cast doubt on the relevance of the distinction between "direct" and "collateral" consequences for determining whether defense counsel have a constitutional duty to advise clients prior to entering a guilty or no contest plea. (See *Padilla, supra,* 559 U.S. at pp. 365–366.) But even if classification of a consequence as "direct" is relevant to defining the scope of the court's advisement duty (maj. opn., *ante,* at p. 16 [citing cases]), today's decision — separate and apart from its announcement of a prospective supervisory rule — does not foreclose relief for defendants who pleaded guilty to an SVPA-qualifying offense without advisement if they are able to demonstrate prejudice.

**LIU, J.**

**I Concur:**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Tellez

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 84 Cal.App.5th 292
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S277072
**Date Filed:** August 26, 2024

---

**Court:**  Superior
**County:**  San Diego
**Judge:**  Roderick Ward Shelton

---

**Counsel:**

Megan Marcotte, Chief Deputy Alternate Public Defender, Vickie Fernandes, Gilson Gray and Anthony B. Parker, Deputy Alternate Public Defenders, for Petitioner Victor Raul Tellez.

Ellen McDonnell, Public Defender (Contra Costa), Rachel Draznin-Nagy and Gilbert Rivera, Deputy Public Defenders, for the California Public Defenders Association as Amicus Curiae on behalf of Petitioner Victor Raul Tellez.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Collette C. Cavalier, Melissa Mandel, Nora Weyl, Christine Y. Friedman and Joy Utomi, Deputy Attorneys General, for Respondent the People.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Anthony B. Parker
Deputy Alternate Public Defender
451 A Street, Suite 1200
San Diego, CA 92101
(619) 446-2934

Joy Utomi
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9117